## SOUTHLAND STEAMSHIP COMPANY OF DELAWARE *v.* DIXON, sheriff.

A corporation chartered under the "general incorporation law" of the State of Delaware, having its capital stock paid in for the purpose of carrying on the corporate business, and having power under its charter to engage in the business of navigation and other industrial enterprises in the State of Georgia, which establishes a branch office and agency in this State and acquires property having a situs in this State for the purposes of taxation, is a navigation company within the meaning of section 8 of the general tax act passed by the General Assembly of Georgia in the year 1918 (Acts 1918, p. 76), requiring "navigation companies," among others, to make returns of their property for taxation to the comptroller-general of the State.

No. 1981. MARCH 3, 1921. REHEARING DENIED MARCH 5, 1921.

Petition for injunction. Before Judge Meldrim. Chatham superior court. March 3, 1920.

*Adams & Adams,* for plaintiff. *George W. Owens,* for defendant.

ATKINSON, J. The exception is to a judgment refusing an interlocutory injunction against the sheriff of Chatham County, to prevent the levy and sale of plaintiff's property under a tax execution issued by the comptroller-general of the State, for State and county taxes on plaintiff's property located in this State, payable in the year 1919. The plaintiff, on April 19, 1919, made a return to the receiver of tax returns of the County of Chatham for the year in question, showing its property and values as follows:

" Ossabaw Island, 22,000 acres of land, ............\$150,000

Shipbuilding plant on leased land, .............. 50,000

Moneys in bank ........................... 125,000

Office furniture, ............................. 500 "

The return was rejected by the receiver of tax returns, at the instance of the comptroller-general, who contended that the law required it to be made to him. Upon refusal of the plaintiff to make returns to the comptroller-general he proceeded to assess the property. The assessment was as follows: ·

" Real Estate located in Chatham County, known as

Ossabaw Island ........................\$220,000

Shipbuilding plant ........................... 50,000

Money, notes and accounts .................... 125,000

Office furniture, fixtures, etc. .................. 500 "

The plaintiff having declined to pay the tax on such assessment, the comptroller-general issued an execution on the basis of his assessment. The plaintiff contended that the property was not returnable to the comptroller-general; and that, he being without jurisdiction, the execution issued by him was void and should be enjoined from enforcement against its property. The case is therefore reduced to the single question of power of the comptroller-general over tangible property of plaintiff located in this State, for the purpose of levying and collecting taxes. Such power is asserted by the comptroller-general on the ground that the plaintiff is a navigation company, and as such is required to make returns of its tangible property located in this State to him, in virtue of section 8 of the general tax act of 1918 (Acts 1918, pp 43-83), which, in so far as is material to the question at issue, provides: " That all railroad companies . . equipment and navigation companies, through their president, general manager, or agents having control of the companies' affairs in this State, shall be required to make re-

turns of all property of said company located in this State to the comptroller-general; and the law now of force providing for the taxation of railroads in this State shall be applicable to the assessment of taxes from said business as above stated." The plaintiff is an incorporated company. Its charter was granted December 23, 1918, in the State of Delaware under the " general corporation law " of that State, applicable to the grant of charters for corporations to engage in any and all kinds of business. Its corporate name was declared to be " Southland Steamship Company of Delaware." Its principal office was required to be in the State of Delaware, City of Wilmington, and it was " to have one or more offices to carry on all or any of its operations and business." The amount of its capital stock with which the corporation would commence business was one thousand dollars, which was distributed among five original subscribers to stock in the proportion of two shares to each subscriber, one of whom was a resident of the State of Maine and the others were residents of the State of Georgia. The total authorized capital stock was five million dollars, divided into fifty thousand shares of the par value of one hundred dollars each. Some of the objects of the corporation, as declared in the charter, were: " To engage in commerce and navigation upon the oceans, seas, sounds, lakes, rivers, canals, bays, harbors, and other waterways between ports of the United States, its territories and / or possessions, Canada, Central America, Mexico, South America, British Isles, Europe, Asia, Africa, Japan, Australia, West Indies, and / or other islands belonging to foreign powers; and, as incidental thereto, for the purpose of contracting for, purchasing, building for its own use and / or owning and / or equipping, furnishing, and fitting, and / or navigating, and / or chartering to or from others, steam, mail, and / or other boats, ships, vessels, and / or other property, to be used in any lawful business, trade, commerce, or navigation upon the oceans, seas, sounds, lakes, rivers, canals, bays, harbors, and other waterways aforesaid, and for the carriage, transportation, and storing of freight, mails, property, and passengers thereon." The charter also empowered the corporation to engage in general commercial business, and " to carry on all or any of the business of ship-brokers, managers of shipping property, freight contractors, barge owners, lightermen, forwarding agents, warehousemen, and / or wharfingers, to manufacture, purchase, or otherwise acquire, own, mortgage, pledge, sell, as-

sign, and transfer or otherwise dispose of, to invest, trade, deal in and deal with goods, wares, and merchandise, and real and personal property of every class and description.  .  .  In general to carry on any other business in connection with the foregoing, whether manufacturing or otherwise, and to have and exercise all the powers conferred by the laws of Delaware upon corporations formed under the act hereinafter referred to, and to do any and all of the things hereinbefore set forth to the same extent as natural persons might or could do." A few days after the grant of the charter the corporation was duly organized and its authorized capital stock fully issued. It established branch offices in the cities of New York and Savannah and proceeded to engage in business. Among the things done was the " taking over " of the business and properties of the " Southland Steamship Company," which was a corporation created as a navigation company under the laws of Georgia (admittedly a navigation company) upon application by substantially the same parties who incorporated plaintiff, the Southland Steamship Company of Delaware. This transaction occurred on December 31, 1918, at which time the Southland Steamship Company went out of business, transferring all of its property and assets to the Southland Steamship Company of Delaware, the latter corporation assuming all the obligations and contracts of the former and continuing to carry on its business. Included among the properties of the Southland Steamship Company was Ossabaw Island. At the time of the transfer the Southland Steamship Company did not own any ship or vessel.

The petition, which was introduced as evidence, alleged, among other things: " That petitioner has never owned a ship or vessel of any kind or character; has never at any time engaged in the business of a navigation company; that there is no immediate prospect of petitioner ever doing so, and that petitioner may never in point of fact engage in the business. It will, in any event, not do so during the year 1919. The only business that petitioner has in point of .fact done in Georgia has been the construction of some tugs for the United States Government, under a contract taken over by the petitioner. Petitioner's New York office has entered into some charter-parties and freight contracts for petitioner." Referring to the charter-parties thus spoken of in the petition, one of the witnesses for the plaintiff testified that they " were the ordinary

charter-parties and contracts, involving only the contracts of affreightment; that the charterers or freighters did not become the owners of the ship for the voyage, and there was no demise of the ship to the plaintiff, and the owner of the ship retained the possession, command, and navigation of the ship during the voyage, the master and the crew remaining the servants of the shipowner. . . These contracts were made in New York by the New York office, are kept in New York City, and are not in Georgia." A witness for the plaintiff also testified: "The . . Southland Steamship Company of Delaware did not, at any time during the year 1919, in any way do the business of a navigation company, and was not at any time during the year 1919 the owner of any ship or vessel, or equipped in any way for the doing of the business of a navigation company. . . There is no immediate prospect of the plaintiff ever owning any ships, or of doing the business of a navigation company." Other evidence was introduced, going into greater details as to the controversy between the parties to the suit; but it is not deemed necessary to go into it at greater length.

While some of the evidence as to the character of the business carried on by the plaintiff was in the nature of conclusions, there was no conflict of evidence as to any of the matters stated above. The question is, was the judge authorized, under the facts as indicated, to hold as he did that the Southland Steamship Company of Delaware was a navigation company, within the meaning of the statutes of this State, and required as such to make returns to the comptroller-general?"

It is provided in the Civil Code, § 2565: "All corporate powers and privileges to navigation companies in this State shall be issued and granted by the Secretary of State, . . " In § 2566 it is provided that in the petition for incorporation there "shall be stated the names and residences of each of the persons desiring to form said corporation, the name of the navigation company they desire to have incorporated, the amount of the proposed capital stock, the number of years it is to continue, the place where its principal office is to be located, a request to be incorporated under the laws of this State," etc. In § 2567 the form of the certificate of incorporation is prescribed, which declares that the incorporators may exercise the powers and privileges of a corporation: " for the purpose of owning, constructing, equipping, maintaining, and operating vessels,

steamboats, and all other water-crafts to be engaged in navigation." The Civil Code, § 2575, deals further with the subject of power of such corporations, by declaring that they shall be empowered: " 1. To acquire, purchase, hold, and operate all such real and personal property as may be necessary or convenient for the maintenance and operation of its said business and to accomplish the purposes of its organization. 2. To convey persons, vessels, and other property, by the use of steam, sail, or other means, and to receive compensation therefor; and to do all other things incident to a general navigation business, including the right to tow, assist, and rescue vessels. 3. To erect and maintain convenient buildings, wharves, docks, fixtures, and machinery for the accommodation and use of their passengers, freight, and other business. 4. To regulate the time and manner in which passengers, vessels, and other property shall be transported, and the compensation to be paid therefor, subject to any existing law of this State upon the subject. 5. To borrow such sum or sums of money, at such rates of interest and upon such terms, as said company or its directors may agree upon, and to execute trust deeds or mortgages, or both, if in their judgment the occasion may require it, for securing the payment thereof." These provisions in the statute tend to show the character of corporation contemplated by the legislature, when it required, in section 8 of the general tax act of 1918, supra, " navigation companies " to make their returns to the comptroller-general. The taxing act, however, extended to all navigation companies, including those incorporated in other States, but having property in this State, as well as those incorporated under the laws of this State. A comparison of the powers conferred in the charter issued in the State of Delaware to the Southland Steamship Company of Delaware, with the provisions of the statutes above indicated, will show that while it was authorized to carry on other kinds of business it was also authorized to carry on the business of a navigation company, such as indicated in the statutes of Georgia. It appears that one of the purposes for which the Southland Steamship Company of Delaware was organized, and therefore one of the objects of the subscribers of its capital stock, was to engage in business in Georgia as a navigation company, and that it had ample charter power; also that it had an agency in Georgia and money and other property in Georgia available as a basis of credit, or otherwise for carrying on a navigation

business. To use the language of the witness, there was "no immediate prospect of the plaintiff owning any ships or of doing the business of a navigation company," but the fact that there was no such prospect would not destroy the power of the company to engage in such business or prevent it from being a navigation company. In the brief of counsel it is said: "If plaintiff in error had done no business of any kind anywhere, it would not be compelled to make a return to the comptroller. If it had done no business of any kind in Georgia, the same result would follow. This being true, if the only business done in Georgia is that stated without dispute, namely, the building of some tugs for the Government, then the case ought to stand, in logic and in law, just as if it had done no business whatever in Georgia." This is a forceful statement of the contention of the plaintiff, but it does not exactly state the case. It overlooks the purpose for which the corporation was organized and its capital stock paid; the powers conferred by the charter; the establishment of an agency in Georgia to carry on the corporate business and the acquisition of capital in Georgia, that could be employed directly or indirectly in navigation. It is not necessary that the company should have actually owned or commenced navigating a ship. If that were necessary, it might require several years preparation in the building of ships or the like, before the company would make return of its taxable property to the comptroller-general. That would not comport with the meaning of the statute. It might as well be said that a railroad company duly organized, which had acquired property consisting of a railroad and equipment — proper subject-matter for taxation, would not be a railroad company within the meaning of the act, and required to make its returns to the comptroller-general, until it had commenced to carry on the business of transportation for which it was organized; or, having engaged in such business, its property could not be so taxed if for any cause there should be a suspension of its transportation business.

The trial judge was authorized to hold that the plaintiff was a navigation company, within the meaning of the statute; and there was no error in refusing an injunction.

*Judgment affirmed. All the Justices concur.*