FINAL COPY
294 Ga. 657

S13A1486. SOUTHERN LNG, INC. v. MacGINNITIE.

NAHMIAS, Justice.

This is the second appearance of this case in this Court. In Southern LNG, Inc. v. MacGinnitie, 290 Ga. 204 (719 SE2d 473) (2011) (Southern I), we reversed the Fulton County Superior Court's dismissal, on the ground of sovereign immunity, of Southern LNG, Inc.'s complaint for declaratory judgment and mandamus, which sought to compel State Revenue Commissioner MacGinnitie to recognize Southern as a "public utility" and to accept Southern's ad valorem property tax returns pursuant to OCGA §§ 48-1-2 (21) and 48-5-511 (a). On remand, the trial court granted summary judgment to the Commissioner on the mandamus claim, on the ground that Southern has an adequate alternative remedy in the form of tax appeals brought under OCGA § 48-5-311. The court said that Southern could raise, and has raised, its statutory claim that it is a public utility required to return its property to the Commissioner rather than to Chatham County in appeals of the county's tax assessments to the county board of equalization and then to the Chatham County Superior Court.

As explained below, the trial court's analysis was incomplete. To preclude mandamus, an alternative legal remedy must be "'equally convenient, complete and beneficial'" to the petitioner. North Fulton Med. Center, Inc. v. Roach, 265 Ga. 125, 127-128 (453 SE2d 463) (1995) (citation omitted). The record as developed thus far contains little information about the Chatham County tax appeals, but it is undisputed that the Commissioner is not currently a party to those actions. As a nonparty, the Commissioner normally would not be legally bound by any ruling there on the statutory issue that Southern has raised; indeed, even an appellate court ruling in those cases would not formally and enforceably bind the nonparty Commissioner. Thus, the Chatham County tax appeals, as currently constituted, appear not to provide Southern with an adequate alternative to mandamus.

But that does not necessarily mean that Southern's mandamus action may proceed, because it is unclear whether the Commissioner *could* be made a party to the Chatham County tax appeals or otherwise become legally bound by them, whose burden it would be to do so, and whether procedural barriers or other features of the tax appeal process would prevent Southern from obtaining a binding ruling on the statutory issue at the heart of this case. The parties have

2

not briefed these issues here or below; the trial court did not address them; and this Court should not try to resolve them in the first instance. Accordingly, we vacate the trial court's grant of summary judgment to the Commissioner and remand the case for further proceedings.

1. Elba Island sits in the Savannah River in Chatham County. Southern owns and operates a facility on the island, where liquefied natural gas (LNG) is unloaded from ships, re-gasified, and then placed into interstate pipelines. The Elba Island facility began operations in 1978, and Southern started filing its ad valorem property tax returns with Chatham County at that time. In 2002, Southern first contacted the Commissioner to request that it be permitted to file its property tax returns with the Commissioner rather than the county, but the Commissioner refused. Southern also appealed the county's ad valorem tax assessments for the years 2003 through 2010 to the county board of equalization and then to the Chatham County Superior Court, arguing both that the county's assessed values were incorrect and that Southern's property should be valued only by the Commissioner.[1]

---

[1] Southern also appealed the county's assessment for the year 2001. The board of equalization agreed with Southern that the county's assessed values were incorrect without ruling on Southern's claim that its property should be valued only by the Commissioner. The county did

3

In 2010, Southern filed a complaint in Fulton County Superior Court against the State Revenue Commissioner in his official capacity.[2] The case was properly venued in Fulton County under OCGA § 48-2-1, which provides that "[t]he official and legal office of the department [of revenue] and of the [state revenue] commissioner shall be in Fulton County." The complaint sought a declaratory judgment that Southern is a "gas" company and therefore a "public utility" under OCGA § 48-1-2 (21),[3] and thus that Southern must file its ad valorem tax returns with the Commissioner rather than the county pursuant to OCGA § 48-5-511 (a).[4] The complaint also sought a writ of mandamus to

not appeal that decision to the Chatham County Superior Court.

[2] The Commissioner at that time was Bart L. Graham. Appellee Douglas L. MacGinnitie, the current Commissioner, was later substituted for Graham by operation of law. See OCGA § 9-11-25 (d) (1) ("When a public officer is a party to an action in his official capacity and during its pendency . . . ceases to hold office, . . . his successor is automatically substituted as a party.").

[3] OCGA § 48-1-2 (21), which is part of the Revenue and Taxation title of the Georgia Code, defines "public utility" to include "all gas, electric light, electric power, hydroelectric power, steam heat, refrigerated air, dockage or cranage, canal, toll road, toll bridge, railroad equipment, and navigation companies." The Revenue and Taxation title does not define "gas . . . compan[y]," but the Public Utilities and Public Transportation title defines "gas company," as used in that title, to mean "any person certificated under Article 2 of Chapter 4 of this title to construct or operate any pipeline or distribution system, or any extension thereof, for the transportation, distribution, or sale of natural or manufactured gas." OCGA § 46-1-1 (5). The federal Natural Gas Act similarly defines a "[n]atural-gas company" as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 USC § 717a (6). An "LNG terminal" is defined separately. See 15 USC § 717a (11).

[4] OCGA § 48-5-511 (a) says: "The chief executive officer of each public utility shall be required to make an annual tax return of all property located in this state to the commissioner. . . ."

4

compel the Commissioner to accept Southern's property tax returns.

Along with his answer, the Commissioner filed a motion to dismiss, arguing, among other things, that the entire action was barred by sovereign immunity and that the mandamus claim was additionally barred because Southern has an adequate alternative remedy in the form of tax appeals brought under OCGA § 48-5-311. Southern filed a motion for summary judgment on the merits. The trial court dismissed Southern's complaint as barred in its entirety by sovereign immunity and thus did not rule on Southern's summary judgment motion. Southern appealed, and in Southern I we reversed the dismissal order, holding that at least the mandamus claim was not barred by sovereign immunity. See Southern I, 290 Ga. at 205.

After remand and completion of discovery, Southern renewed its summary judgment motion, and the Commissioner filed a cross-motion for summary judgment. On April 3, 2013, the trial court denied Southern's summary judgment motion and granted summary judgment to the Commissioner on Southern's mandamus claim.[5] The court held that Southern had an "acceptable"

---

[5] The majority opinion in Southern I declined to address whether Southern could also obtain the declaratory judgment it sought. See 290 Ga. at 205 ("We need not address whether sovereign immunity would act as a bar to appellant's declaratory action, as it is clear that, if the declaratory

alternative remedy precluding mandamus by way of an appeal from any final tax assessment by Chatham County to the county board of equalization and then the Chatham County Superior Court under OCGA § 48-5-311.[6] Southern again appealed to this Court. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (5) (giving this Court general appellate jurisdiction over "[a]ll cases involving extraordinary remedies" like mandamus); OCGA § 9-11-56 (h) (authorizing an immediate appeal from "[a]n order granting summary judgment on any issue or as to any party").[7]

At oral argument, we requested additional briefing on two

action were barred by sovereign immunity (thus leaving appellant without an adequate legal remedy), appellant's mandamus action would still remain viable."). But see id. at 206 (Benham, J., dissenting) ("I believe the trial court was correct when it determined that sovereign immunity precluded [Southern] from bringing a declaratory judgment action against the Commissioner . . . ."). After remand, the Commissioner did not seek summary judgment on Southern's declaratory judgment claim; Southern did not focus on that claim in renewing its summary judgment motion; and the trial court's summary judgment order did not mention the declaratory judgment claim. Accordingly, like the majority opinion in Southern I, this opinion does not address "whether a declaratory action against the State to determine one's rights with respect to the applicability of a statute is barred by sovereign immunity." 290 Ga. at 206.

[6] OCGA § 48-5-311 (e) (1) (A) (i) authorizes "an appeal from an assessment by the county board of tax assessors to . . . [t]he county board of equalization as to matters of taxability, uniformity of assessment, and value . . . ." OCGA § 48-5-311 (g) (1) then authorizes de novo appeals from "decisions of the county board of equalization . . . to the superior court of the county in which the property lies." See generally Fitzpatrick v. Madison County Bd. of Tax Assessors, 292 Ga. 74, 74-76 & n.1 (734 SE2d 397) (2012) (discussing the county tax appeal process).

[7] We note that under OCGA § 9-11-56 (h), the apparent pendency of the declaratory judgment issue in the trial court does not preclude Southern from directly appealing the court's summary judgment order on the mandamus issue.

6

questions:   (1) whether Southern would face any actual harm if the Commissioner refused to accept its tax returns, even if legally required to do so; and (2) whether the Chatham County tax appeals constitute an adequate legal remedy precluding mandamus if the Commissioner will not be legally bound by the judgments there.  Both parties filed supplemental briefs.

2.      We start by confirming that Southern has standing to seek a writ of mandamus against the Commissioner under OCGA § 9-6-24, which says:

> Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown [to petition for mandamus], but it shall be sufficient that a plaintiff is interested in having the laws executed and the duty in question enforced.

See, e.g., Rothschild v. Columbus Consolidated Govt., 285 Ga. 477, 479 (678 SE2d 76) (2009) ("'OCGA § 9-6-24 confers standing to seek the writ in those cases wherein the defendant owes a public duty which the plaintiff, as a member of the public, is entitled to have enforced.'" (citation omitted)); Head v. Browning, 215 Ga. 263, 266-267 (109 SE2d 798) (1959) (applying the broad statutory standing rule for mandamus to a petition for injunctive relief against the State Revenue Commissioner).

Moreover, Southern has a special interest in enforcing the Commissioner's

alleged public duty to accept returns from public utilities, thereby resolving the ongoing uncertainty about where Southern is required to file its tax returns and the amount of taxes that Southern ultimately will be required to pay.[8] Contrary to the Commissioner's suggestion, a ruling in the county tax appeals that Southern must return its property to the Commissioner rather than to the county would not relieve Southern of its obligation to pay property taxes if the Commissioner then refused to accept the returns. See OCGA § 48-2-18 (e).[9]

---

[8] The Declaratory Judgments Act expressly permits a plaintiff to seek mandamus relief in a complaint for declaratory judgment. See OCGA § 9-4-3 ("Further plenary relief, legal or equitable, including but not limited to damages, injunction, mandamus, or quo warranto, may be sought in a petition for declaratory judgment . . . ."). And unlike mandamus, a declaratory judgment is available "notwithstanding the fact that the complaining party has any other adequate legal or equitable remedy." OCGA § 9-4-2 (c).

[9] OCGA § 48-2-18 (e) says:
. . . In the event that the [State Revenue Commissioner] has not provided to the [county] board of tax assessors by August 1 of a tax year the notice of proposed assessments set forth in subsection (c) of this Code section for taxpayers who are required to return their property to the commissioner pursuant to Code Section 48-5-511, the tax commissioner or tax receiver of the county where such property is located may issue an interim tax bill to such taxpayers, owning property in the county in an amount equal to 85 percent of such taxpayer's property tax bill for the immediately preceding tax year or, in the event that such tax year is under appeal, the tax bill for the most recent tax year in which the taxes for such property were finally assessed. At such time as the county board of tax assessors adds the assessments for the tax year made in accordance with subsection (d) of this Code section to the regular county digest, the tax commissioner or tax receiver shall issue a corrected tax bill to each taxpayer who received an interim tax bill, such corrected tax bill to be in an amount based upon the assessed value of such taxpayer's property shown on the regular county digest and such taxpayer shall remit any additional taxes due or, in the event of overpayment, shall be entitled to a tax refund, in either case, without interest or penalty. . . .

3. We turn next to the question of whether Southern's mandamus claim against the Commissioner is precluded by Southern's tax appeals in Chatham County.

(a) Mandamus is a remedy for improper government inaction — the failure of a public official to perform a clear legal duty. See Scarborough v. Hunter, 293 Ga. 431, 434-435 (746 SE2d 119) (2013). As relevant here, the general mandamus statute says:

> All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights . . . .

OCGA § 9-6-20. OCGA § 48-5-511(a) requires the Commissioner to accept ad valorem tax returns from "public utilities" as defined in OCGA § 48-1-2 (21) and then to determine, in conjunction with the State Board of Equalization, the fair market value of their property. See McLennan v. Undercofler, 222 Ga. 302, 306 (149 SE2d 705) (1966) ("The State Revenue Commissioner has the duty of receiving returns for ad valorem taxes from public utilities and the duty of

9

reviewing and correcting such returns." (citations omitted)).[10] Thus, if Southern truly is a "public utility" to which OCGA § 48-5-511 (a) applies, an action for mandamus could be a remedy to compel the Commissioner to accept Southern's property tax returns.

In granting summary judgment to the Commissioner, the trial court relied on the general rule that mandamus is unavailable where the petitioner has another adequate legal remedy. See OCGA § 9-6-20; North Fulton Med. Center, Inc. v. Roach, 265 Ga. 125, 127-128 (453 SE2d 463) (1995); Carnes v. Crawford, 246 Ga. 677, 678 (272 SE2d 690) (1980). The court pointed to the availability of an appeal of the county's tax assessments under OCGA § 48-5-311, noting that Southern could raise (and has raised) its arguments regarding OCGA §§ 48-1-2 (21) and 48-5-511 (a) in appealing Chatham County's final assessments for the years 2003 to 2010 first to the county board of equalization and then to the Chatham County Superior Court, where the appeals were still

---

[10]   Georgia employs the "unit tax" method for public utilities, which requires the Commissioner and the State Board of Equalization to determine the fair market value of all of a utility's taxable assets in the state as a unit and then apportion that value among the counties. See Telecom*USA, Inc. v. Collins, 260 Ga. 362, 364-365 (393 SE2d 235) (1990). That determination is then binding on the counties in calculating a public utility's ad valorem taxes for property in each county. See Monroe County v. Ga. Power Co., 283 Ga. 12, 16 (655 SE2d 817) (2008).

10

pending.[11]

However, "[t]he general rule that mandamus does not lie where the petitioner has [another] adequate legal remedy is limited to cases in which the legal remedy is 'equally convenient, complete and beneficial.'" Roach, 265 Ga. at 127-128 (citation omitted). The Commissioner is not a party to the Chatham County tax appeals. And

> "[i]t is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."

Taylor v. Sturgell, 553 U. S. 880, 884 (128 SCt 2161, 171 LE2d 155) (2008) (citation omitted). Accord Barham v. City of Atlanta, 292 Ga. 375, 378 (738 SE2d 52) (2013). Thus, assuming without deciding that the statutory question of where Southern must file its ad valorem tax returns can be answered in the Chatham County tax appeals, see Southern I, 290 Ga. at 208-210 (Benham, J., dissenting), that answer will not be legally binding on the Commissioner, because he is not now a party to those proceedings. A ruling on the statutory issue that is not binding on the Commissioner is not an adequate alternative to

---

[11] As best we can tell, those tax appeals, which are grouped into several different cases, remain pending in the Chatham County court.

mandamus against him.[12]

(b)     The Commissioner disagrees, invoking the doctrine of stare decisis. The Commissioner argues that if the Chatham County tax appeals result in an appellate court ruling that Southern is a public utility that must file its returns with the Commissioner rather than the county, he would have no credible basis for continuing to refuse to accept Southern's returns. The Commissioner adds that if he still refused to accept Southern's returns at that point, Southern would be authorized to file another complaint for mandamus against him, and the trial court in that proceeding would be required to grant the mandamus based on the binding appellate precedent. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as

---

[12] The rule that a court's judgment binds only the parties to the case is "subject to a handful of discrete and limited exceptions." Smith v. Bayer Corp., ___ U. S. ___, ___ (131 SCt 2368, 2379, 180 LE2d 341) (2011). The United States Supreme Court has described "six established categories" where a nonparty may be bound by a judgment: (1) where the nonparty agrees to be bound by an adjudication between others; (2) where certain substantive legal relationships exist between the nonparty and a party to the judgment; (3) in certain limited circumstances where the nonparty was adequately represented by a party with the same interests, as in properly conducted class actions; (4) where the nonparty has assumed control over the litigation despite not being a party; (5) where the nonparty brings a later suit as the designated representative of a party to the prior judgment; and (6) where a special statutory scheme expressly forecloses successive litigation by nonparties and is consistent with due process, e.g., bankruptcy and probate proceedings. See Taylor, 553 U. S. at 893-895. The Commissioner has not shown that any of these exceptions applies here, nor has the Commissioner, even in his supplemental brief filed after oral argument, offered to take action to try to make a ruling in the Chatham County tax appeals binding on him, such as joining those actions as a party or formally agreeing to be bound by the judgments there.

precedents."); Art. VI, Sec. V, Par. III ("The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents."). According to the Commissioner, in this way, the Chatham County tax appeals provide Southern with an adequate legal remedy precluding mandamus at this time.

Assuming again that Southern's statutory issue can be properly raised and ruled upon in the Chatham County tax appeal proceedings, the process envisioned by the Commissioner can hardly be described as "'equally convenient, complete and beneficial'" to the present action for mandamus as a means for requiring the Commissioner to accept Southern's tax returns. Roach, 265 Ga. at 128 (citation omitted).[13] Beyond its convolutions, there is no assurance that the Chatham County actions will produce a binding appellate precedent on the statutory issue for Southern to invoke in a later mandamus case (and it is noteworthy that the Commissioner does not say that he would abide by a statutory ruling by the Chatham County Superior Court). The county may

---

[13] We note that Justice Benham's dissent in Southern I, while arguing that the tax appeals provided an adequate remedy at law because Southern's statutory issue could be decided in such proceedings, did not address whether such a decision would bind the Commissioner and therefore be equally convenient, complete, and beneficial to Southern as a ruling that the Commissioner would be legally required to follow. See Southern I, 290 Ga. at 208-210 (Benham, J., dissenting).

13

settle the actions, or choose not to appeal if the superior court rules in favor of Southern, or an appeal may be decided on some other ground. In any of those events, there would be no opinion by the Court of Appeals or this Court for Southern to invoke in a subsequent mandamus proceeding.

More fundamentally, appellate precedents — the decisions of appellate courts on particular legal questions — control the future rulings of lower *courts* on the same questions, not the legal rights of the *parties* who appear in those courts, unless the party was bound by the actual judgment in the prior case. A party not so bound is entitled to argue that the precedent should be distinguished or even overruled, understanding that the trial court lacks the authority to disregard precedent and that an argument to overrule therefore must be pursued on appeal, where it will have to surmount the high hurdle of stare decisis. See, e.g., State v. Jackson, 287 Ga. 646, 647 (697 SE2d 757) (2010) (overruling a precedent challenged in this way). This is only fair, because a party that was not involved in prior litigation of a legal question may raise arguments and present facts, not offered by the previous parties, that convince the appellate court that its earlier decision was misguided or does not apply to the circumstances of the new case. See Taylor, 553 U. S. at 892-893 (noting that a nonparty generally

14

has not had a full and fair opportunity to litigate the claims and issues settled in the prior suit and that the application of claim and issue preclusion to nonparties "thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court'" (citation omitted)).[14]

In short, even if Southern obtained a clear statutory ruling in its favor from this Court in an appeal of the Chatham County actions, that precedent would not be *binding* on the Commissioner. The Commissioner's adherence to such a ruling might depend on his view of the litigation strategy that Chatham County pursued; moreover, future Commissioners would not be legally bound by their predecessor's informally taken position. Indeed, an announcement by the Commissioner that he now will voluntarily accept Southern's tax returns would not normally render moot Southern's lawsuit to obtain a legally binding ruling to that effect. See WMW, Inc. v. Am. Honda Motor Co., 291 Ga. 683, 685 (733 SE2d 269) (2012) (explaining that a defendant's "'voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal

[14] In saying this, we do not mean to downplay the importance to our legal system of binding appellate precedent and the doctrine of stare decisis, which provide valuable guidance in conforming conduct to the law and solid predictions of how disputes will be resolved if brought to court for resolution – often allowing disputes to be resolved without such litigation. But there is a difference between facing an uphill battle against precedent and not having the right to fight that battle at all.

15

for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed'" (citation omitted)). Only a judgment that formally and enforceably binds the Commissioner — like a judgment in this mandamus action — would finally resolve the legal issue that Southern has raised.[15]

The Commissioner cites four cases that he claims support his argument that an adequate legal remedy precluding mandamus need not include the public official against whom mandamus is sought. Those cases are inapposite, however, because they involved plaintiffs who were seeking mandamus against public officials to obtain relief that the plaintiffs could pursue directly.[16] Here,

[15] The Commissioner also contends that we must assume that he would abide by an appellate decision on the statutory issue in the Chatham County actions, even though he is not a party to them, based on this passage from DeKalb County v. Wal-Mart Stores, Inc., 278 Ga. 501 (604 SE2d 162) (2004): "We must presume that the members of the Board [of Zoning Appeals] will, without the necessity of the issuance of a writ of mandamus, do their duty and obey the law as enacted by the legislature and as declared and interpreted by the courts . . . ." Id. at 503. That statement was made, however, in the context of holding that the trial court erred in granting mandamus relief against the public officials – the BZA – without first considering Wal-Mart's requests for a writ of certiorari and a declaratory judgment against the BZA *in the same case*, which might have obviated the need for mandamus and which would be binding on the BZA. The statement was not made in the context of a judicial declaration of law made in an action to which the public official was not a party. And as discussed above in footnote 5, Southern's claim for declaratory judgment against the Commissioner, which might invoke this maxim, is not at issue in this appeal.

[16] See Garnett v. Hamrick, 280 Ga. 523, 524 (630 SE2d 384) (2006) (holding that mandamus was unavailable to compel the Governor to give the plaintiff permission to file a lawsuit against the Department of Human Resources, where the plaintiff did not need the Governor's permission to do so); Ungar v. Mayor &c. of Savannah, 224 Ga. 613, 613-615 (163 SE2d 814) (1968) (holding that mandamus was unavailable to compel the Mayor and Aldermen of Savannah to file a lawsuit to abate a public nuisance, where the plaintiff had standing to file such a lawsuit

16

by contrast, Southern seeks mandamus against the Commissioner, the sole state official charged with the responsibility of accepting a public utility's tax returns. Southern cannot do on its own what it seeks by mandamus to compel the Commissioner to do, and no other defendant can provide Southern the relief it seeks. As currently constituted, the Chatham County actions may require the county to *stop* valuing Southern's property, but they cannot require the Commissioner to *start* doing so. It might take two separate actions to obtain judgments binding on two different defendants; the law does not always limit plaintiffs to only one lawsuit on an issue.

(c)    The law does, however, encourage — and sometimes mandate — that all those who may be affected by a judgment be made parties to the proceeding that will produce that judgment, or otherwise be bound by it, because conflicting judgments can produce their own problems.[17] As just

---

himself); Solomon v. Brown, 218 Ga. 508, 508-509 (128 SE2d 735) (1962) (holding that mandamus was unavailable to compel city and county officials and the State Revenue Commissioner to arrest certain alleged violators of the state liquor laws, where the plaintiffs could execute a citizen's arrest or seek an arrest warrant directly from a magistrate); State Highway Dept. of Ga. v. Reed, 211 Ga. 197, 197-198 (84 SE2d 561) (1954) (holding that mandamus was unavailable to compel the State Highway Department and others to remove obstructions to a public street and railroad crossing, where the same relief could be obtained in a lawsuit to abate a public nuisance).

[17] We note in this respect that, while Southern apparently wants to get an answer to its statutory issue in both the Fulton County mandamus case (binding on the Commissioner) and the

17

discussed, the Chatham County proceedings are not an adequate alternative to mandamus if they cannot produce a ruling on Southern's statutory issue that will be binding on the Commissioner. Thus, the trial court erred in granting summary judgment to the Commissioner simply on the ground that the county tax appeals may produce a ruling on the statutory issue. The question remains, however, whether the Commissioner *could* be made a party to or otherwise legally bound by the Chatham County tax appeals, which could preclude this mandamus action, particularly if that actually occurred or if Southern had the burden of making it happen and failed to do so. See <u>Humphrey v. Owens</u>, 289 Ga. 721, 722 (715 SE2d 119) (2011) (explaining that mandamus is barred by the *availability* of another adequate remedy, even if the petitioner failed to utilize the alternative remedy and it is no longer available).

A tax appeal to superior court pursuant to OCGA § 48-5-311 (g) is a special statutory proceeding under the Civil Practice Act ("CPA"). See <u>Spencer</u>

Chatham County tax appeals (binding on the county), the possibility exists that Southern will not prevail in both cases but rather may be saddled with conflicting rulings, *both* of which would be binding on Southern. For example, the Fulton County court might rule that OCGA § 48-5-511 (a) requires Southern to file its tax returns with the Commissioner, who must accept them, while the Chatham County court could rule that OCGA § 48-5-511 (a) does not apply to Southern, meaning that the company must file its tax returns with the county and the Commissioner cannot accept them. The process of resolving those conflicting rulings through appeals could be long and complicated, and the uncertainty that Southern would face during that process might exceed what it faces today.

18

v. Lamar County Bd. of Tax Assessors, 202 Ga. App. 742, 743 (415 SE2d 332) (1992). The CPA's provisions regarding joinder of parties and similar matters apply in all special statutory proceedings, regardless of any conflict with the underlying statutory scheme. See OCGA § 9-11-81 (requiring application of the CPA as a whole to all special statutory proceedings, except where the statutory scheme expressly prescribes a specific conflicting rule of practice or procedure, but providing that "in any event, the provisions of [the CPA] governing . . . joinder of parties and causes, making parties, . . . interpleader, [and] intervention . . . shall apply to all such proceedings"). See also Spencer, 202 Ga. App. at 743-744 (holding that OCGA § 9-11-17 (a), the CPA provision governing real parties in interest, applies to tax appeals under OCGA § 48-5-311).

Southern and the Commissioner have not briefed, and the trial court has not addressed, whether the CPA rules on joinder of persons necessary for a just adjudication,[18] permissive joinder of parties,[19] interpleader,[20] or intervention,[21]

---

[18] OCGA § 9-11-19, the CPA rule for joinder of persons needed for just adjudication, provides:

(a) *Persons to be joined if feasible.* A person who is subject to service of process shall be joined as a party in the action if:

(1) In his absence complete relief cannot be afforded among those who are

19

already parties; or

(2)He claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(A)As a practical matter impair or impede his ability to protect that interest; or

(B)Leave any of the persons who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by court whenever joinder not feasible.* If a person, as described in paragraphs (1) and (2) of subsection (a) of this Code section, cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

(1) To what extent a judgment rendered in the person's absence might be prejudicial to him or to those already parties;

(2) The extent to which, by protective provisions in the judgment, by the shaping of relief, or by other measures, the prejudice can be lessened or avoided;

(3) Whether a judgment rendered in the person's absence will be adequate;

(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder; and

(5) Whether and by whom prejudice might have been avoided or may, in the future, be avoided.

(c) *Pleading reasons for nonjoinder.* A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons, as described in paragraphs (1) and (2) of subsection (a) of this Code section, who are not joined and the reasons why they are not joined.

(d) *Exception of class actions.* This Code section shall be subject to Code Section 9-11-23.

[19] OCGA § 9-11-20, the CPA rule for permissive joinder of parties, provides:

(a) *Permissive joinder.* All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be

or any other procedural devices, allow or require the Commissioner to become

interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief and against one or more of the defendants according to their respective liabilities.

(b) *Separate trials*. The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him and may order separate trials or make other orders to prevent delay or prejudice.

[20] OCGA § 9-11-22, the CPA interpleader rule, provides:

(a) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. This Code section supplements and does not in any way limit the joinder of parties permitted in Code Section 9-11-20.

(b) The remedy provided in this Code section is in addition to and in no way supersedes or limits the remedy of equitable interpleader provided for in Code Sections 23-3-90 through 23-3-92.

[21] OCGA § 9-11-24, the CPA rule on intervention, provides:

(a) *Intervention of right*. Upon timely application anyone shall be permitted to intervene in an action:

(1) When a statute confers an unconditional right to intervene; or

(2) When the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) *Permissive intervention*. Upon timely application anyone may be permitted to intervene in an action:

(1) When a statute confers a conditional right to intervene; or

(2) When an applicant's claim or defense and the main action have a question of law or fact in common.

In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) *Procedure*. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Code Section 9-11-5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene.

a party to, or otherwise become bound by, a judgment rendered on the statutory issue in the Chatham County tax appeals, and whether Southern controls that process or can be or has been thwarted by the Commissioner. These questions may be complicated and may depend on the litigation strategy of the parties. To offer just one example, if the Commissioner were deemed a necessary party in the Chatham County actions, see OCGA § 9-11-19 (a), he might — or might not — object to joinder based on venue. If such an objection were made and could be sustained, the Chatham County court would be required to dismiss the Commissioner from the tax appeals, see id., and Southern would be back at square one. Questions of sovereign immunity might also arise again if Southern sought a judgment binding against the Commissioner in the appeals of taxes assessed by the county. These questions should be addressed first by the trial court, with full briefing and whatever development of the record is needed from the parties.[22]

For these reasons, we vacate the grant of summary judgment to the

---

[22] If, at that point, there remains real uncertainty about the relief that Southern can obtain against the Commissioner through the Chatham County tax appeals, then the trial court may conclude that those proceedings do not provide a "convenient, complete and beneficial" alternative to this mandamus action. Unlike the dissent, however, we are not ready to leap to that conclusion based on the minimal briefing and record related to these issues that is available to us at this time.

Commissioner and remand the case to the trial court for further consideration.[23]

Judgment vacated and case remanded. All the Justices concur, except Melton, J., who dissents.

BENHAM, Justice, concurring.

In the original appearance of this case, I issued a dissenting opinion in which I concluded the trial court did not err when it dismissed Southern LNG, Inc.'s petition for writ of mandamus because I believed an appeal before a board of equalization provides an adequate remedy at law for the determination of Southern's question concerning the validity of the county tax assessment. Southern LNG, Inc. v. MacGinnitie, 290 Ga. 204, 206-210 (719 SE2d 473) (2011) (Southern I). Upon further consideration of the issue, I agree that it appears necessary to analyze whether this alternative legal procedure is "equally convenient, complete and beneficial," before it can be determined to be an adequate alternative remedy to Southern's mandamus action. See North Fulton Med. Center, Inc. v. Roach, 265 Ga. 125, 127-128 (453 SE2d 463) (1995). Consequently, I fully concur that summary judgment in favor of the

_____

[23] If on remand the trial court determines that the mandamus action can proceed, the court can address the merits of Southern's statutory claim. We express no opinion on that issue at this time.

Commissioner must be vacated and the case remanded so that the questions raised by this Court's current opinion may be addressed by the trial court.[24]

MELTON, Justice, dissenting.

When one takes a closer look at the issue that Southern is truly trying to have addressed, it becomes clear that an appeal before the Chatham County board of equalization pursuant to OCGA § 48-5-311 cannot provide Southern with an adequate remedy at law. The true issue here is not simply whether Southern qualifies as a "public utility" pursuant to OCGA § 48-5-511, but whether Southern can compel the Commissioner to accept its ad valorem tax returns as a public utility pursuant to OCGA §§ 48-1-2 (21) and 48-5-511. As the majority points out, here,

> Southern seeks mandamus against the Commissioner, the sole state official charged with the responsibility of accepting a public utility's tax returns. Southern cannot do on its own what it seeks by mandamus to compel the Commissioner to do, and no other

---

[24] Although, as noted in footnote 5, on remand the Commissioner did not seek summary judgment on Southern's declaratory judgment claim and thus the issue of whether that claim is barred by sovereign immunity was not addressed by the trial court, I reiterate my opinion that "the doctrine of sovereign immunity bars appellant's declaratory judgment action since it does not fall within the waiver of sovereign immunity found in OCGA § 50-13-10." Southern I, supra, 290 Ga.at 206.

defendant can provide Southern the relief it seeks. As currently constituted, the Chatham County actions may require the county to *stop* valuing Southern's property, but they cannot require the Commissioner to *start* doing so.

Maj. Op. at 666.

Moreover, it remains unclear whether the Commissioner can even be added as a party to the Chatham County actions, and, even if we assume that the Commissioner can be added to such actions, whether any judgment from those actions would be binding against the Commissioner. See Maj. Op. at 669. (Questions regarding whether the Commissioner may be properly added as a party to Southern's Chatham County proceedings "may be complicated," as the Commissioner may object on venue grounds, and "[q]uestions of sovereign immunity might also arise . . . if Southern sought a judgment binding against the Commissioner in the appeals of taxes assessed by the county"). What seems to be clearer, however, is that the County would be an interested party in any mandamus action against the Commissioner that might affect the County's ability to value Southern for tax purposes. In this connection, although,

> [t]echnically[,] in mandamus[,] the only necessary parties are the plaintiff who asserts the right to have an act done, and the defendant upon whom the public duty rests to perform it[,] the practice is common and commendable . . . to bring in other persons who are

2

likely to be injuriously affected by the judgment, in order that they may have an opportunity to be heard in their own behalf, and in a proper case the court will suspend proceedings until this is done. Reducing this general statement to a more definite rule, we may say that, generally speaking, all persons having any material interest, however slight, in the result of the litigation are proper parties respondent to an application for a writ of mandamus; whereas, when a person is shown by the petition in a proceeding for mandamus to have a legal interest in the right or duty sought to be enforced by the writ, and it also appears that the rights of such person will be collaterally determined by the judgment if rendered as prayed in the petition, the cause will not ordinarily be adjudicated until such person is made a respondent thereto, if he is shown to be within the jurisdiction of the court.

(Citation and punctuation omitted.) Gullatt v. Slaton, 189 Ga. 758, 760 (1) (8 SE2d 47) (1940).

In any event, the lack of certainty regarding any relief that Southern may or may not be able to obtain against the Commissioner in the Chatham County tax appeals certainly begs the question whether the County proceedings can provide a legal remedy to Southern that is just as "convenient, complete and beneficial" as the mandamus action. (Citation and punctuation omitted.) North Fulton Medical Center v. Roach, 265 Ga. 125, 128 (2) (453 SE2d 463) (1995). Indeed, it seems that there should be at least some degree of certainty with respect to the adequacy of the remedy at law available to Southern in order for

3

a court to conclude that mandamus is not an available remedy to Southern. See id. ("The general rule that mandamus does not lie where the petitioner has an adequate legal remedy is limited to cases in which the legal remedy is 'equally convenient, complete and beneficial'") (citation omitted). Here, we seem to be left only to guess whether the Chatham County tax appeal proceedings "might" be good enough "if" the Commissioner "could" be joined and a binding judgment "could" eventually be entered against him. If we have to resort to such guesswork, I believe that the legal remedy in question simply is not adequate.

The inadequacy of the legal remedy only becomes more pronounced when one considers that, even under ideal circumstances, the Chatham County actions present an unnecessarily inconvenient and roundabout way to address the real issue here, which is to compel the Commissioner to accept Southern's ad valorem tax returns. Specifically, even if the Commissioner could be added to the Chatham County actions (barring venue challenges) and the Chatham County actions could result in a binding judgment against the Commissioner (despite sovereign immunity concerns) based on a finding that Southern was a "public utility," such proceedings simply would not be "equally convenient" to a direct mandamus action against the Commissioner to resolve the true issue

4

presented here.

For all of these reasons, I must respectfully dissent from the majority.

Decided March 3, 2014.

Mandamus. Fulton Superior Court. Before Judge LaGrua.

Ragsdale, Beals, Seigler, Patterson & Gray, William J. Seigler III, Herbert H. Gray III, Brian J. Morrissey, Lisa F. Stuckey, for appellant.

Samuel S. Olens, Attorney General, Warren R. Calvert, William W. Banks, Jr., Senior Assistant Attorneys General, Alex F. Sponseller, Assistant Attorney General, for appellee.