300 Ga. 690
FINAL COPY

S16A1659.  RILEY v. SOUTHERN LNG, INC.

BOGGS, Justice.

This is the third appeal of this case arising from the efforts of appellee

Southern LNG, Inc. ("Southern") to compel State Revenue Commissioner

Lynnette T. Riley[1] ("the Commissioner") to recognize Southern as a "public

utility" under OCGA § 48-5-511 and to accept Southern's ad valorem property

tax returns.[2] In Southern LNG, Inc. v. MacGinnitie, 290 Ga. 204 (719 SE2d

473) (2011) ("Southern I"), we reversed the trial court's dismissal of Southern's

petition for a writ of mandamus, holding that Southern's claim was not barred

by sovereign immunity. Id. at 205. On remand, the trial court granted summary

judgment to the Commissioner on the mandamus claim, holding that Southern

had an adequate alternative remedy to mandamus in its Chatham County

---

[1] Lynnette T. Riley is the current State Revenue Commissioner and has been substituted as defendant in her official capacity by operation of law. See OCGA § 9-11-25 (d) (1).

[2] The factual background and procedural history of the litigation are fully recounted in the previous appeals, and we will repeat them here only as necessary to determine the issues presented.

property tax appeals under OCGA § 48-5-311. In Southern LNG, Inc. v. MacGinnitie, 294 Ga. 657 (755 SE2d 683) (2014) ("Southern II") we vacated the grant of summary judgment because the trial court did not determine, and the parties did not brief, whether the Commissioner could be made a party to or be bound by a judgment in the Chatham County tax appeals, and thus did not reach the essential question of whether the alleged alternative remedy was "'equally convenient, complete and beneficial' to the petitioner. [Cit.]" Id. at 657-658. We therefore remanded the case to the trial court for further proceedings. Id. at 658. Additionally, we laid out for the parties in considerable detail the potential legal and procedural issues bearing on the question of whether the Commissioner could become a party to or be bound by a judgment rendered in the Chatham County tax appeals. Id. at 666-669 (3) (c).

On remand, Southern and the Commissioner filed renewed cross-motions for summary judgment. The trial court granted summary judgment in favor of Southern, holding that it had no "equally convenient, complete and beneficial" remedy other than mandamus, and that its petition for mandamus therefore would lie. It denied the Commissioner's motion for summary judgment, granted Southern's motion for summary judgment and a writ of mandamus, and directed

2

the Commissioner "to accept [Southern's] ad valorem property tax returns pursuant to OCGA § 48-5-511 (a) *instanter*." (Emphasis in original.) From this judgment the Commissioner appeals. Pretermitting whether an adequate legal remedy has been shown, we reverse the trial court's judgment because Southern has failed to show that the Commissioner violated a clear legal duty in refusing to conclude that Southern is a "gas company" and therefore a "public utility" within the meaning of OCGA § 48-1-2 (21).

1. In <u>Southern II</u>, we laid out in some detail the potential issues that could determine whether an "equally convenient, complete and beneficial" legal remedy is available to Southern, including venue, sovereign immunity, and

> whether the [Civil Practices Act] rules on joinder of persons necessary for a just adjudication, permissive joinder of parties, interpleader, or intervention, or any other procedural devices, allow or require the Commissioner to become a party to, or otherwise become bound by, a judgment rendered on the statutory issue in the Chatham County tax appeals, and whether Southern controls that process or can be or has been thwarted by the Commissioner.

(Citations and footnotes omitted.) Id. at 667-669 (3) (c). We also noted that such issues may depend on the litigation strategy of the parties, and could result in

3

conflicting rulings. Id. at 666 n. 17.[3]

The Commissioner, in a motion before this court, states that she filed a motion to intervene in the Chatham County proceedings on November 2, 2016, after this case was orally argued.[4] But in the same pleading as well as in her brief, the Commissioner asserts that the Chatham County litigation has been stayed pending the outcome of these proceedings. But even if the Commissioner has moved to intervene, there is no indication that the Chatham County Superior Court has ruled on that motion, which could be withdrawn before a ruling or denied if any stay is lifted. Whether Southern could raise the dispositive issue in the Chatham County tax appeal, as the Commissioner argues both here and below, begs the question of whether that issue could be *decided* in the Chatham County tax appeal, as well as whether it could bind the Commissioner.

In sum, the legal, procedural, and strategic obstacles outlined in Southern

---

[3] The burden is upon Southern to show that it lacks an adequate legal remedy so that an action for mandamus will lie. See Thompson v. Paulk, 265 Ga. 479, 479-480 (457 SE2d 665) (1995).

[4] According to Southern's responses to discovery, the multiple tax appeals have been consolidated.

II remain unresolved, particularly in light of the asserted stay of proceedings. But we need not address those issues, because Southern's petition for mandamus fails on an alternative ground: the trial court erred in finding that the Commissioner had a clear legal duty to accept Southern's ad valorem property tax returns pursuant to OCGA § 48-5-511 (a).

2. In considering a petition for writ of mandamus,

> [a] clear legal right to the relief sought may be found only where the claimant seeks to compel the performance of a public duty that an official or agency is required by law to perform. [F]or mandamus to issue, the law must not only authorize the act to be done, but must require its performance. Where performance is required by law, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion.

(Citations and punctuation omitted.) Bibb County v. Monroe County, 294 Ga. 730, 735 (2) (b) (755 SE2d 760) (2014); see also Forsyth County v. White, 272 Ga. 619, 620 (2) (532 SE2d 392) (2000). Moreover,

> a public official's exercise of discretion will not be disturbed by a mandamus order unless the official's actions were arbitrary, capricious and unreasonable. A mandamus complaint cannot succeed merely by urging that the public action it seeks to compel would be "reasonable" – mandamus is not available to remedy anything other than a public official's (or a public body's) discretionary abuse as evidenced by action that was arbitrary, capricious, and unreasonable.

5

(Citations and punctuation omitted.) <u>Gilmer County v. City of East Ellijay</u>, 272 Ga. 774, 777 (2) (533 SE2d 715) (2000).

The trial court granted the writ of mandamus on the basis that Southern is a "gas . . . company" and therefore a "public utility" within the meaning of OCGA § 48-1-2 (21). In its decision, the trial court relied upon <u>Undercofler v. Colonial Pipeline Co.</u>, 114 Ga. App. 739 (152 SE2d 768) (1966). In that declaratory judgment action, Colonial, which owned a pipeline system spanning 35 counties in Georgia, sought a ruling as to whether it was required to make its tax return to the Commissioner or to the individual counties. The Court of Appeals noted that Colonial was not actually "doing a gas business" as it did not produce or market any product but merely transported it. But the court then relied upon a lengthy enumeration of "the nature of taxpayer's business" in Colonial's charter, including in addition to transportation the "'purchase, sales, marketing and distribution of crude petroleum and the products and by-products thereof, . . . artificial gas, natural gas, and the products and by-products thereof,'" (emphasis omitted) id. at 739, and concluded that Colonial's charter authorized it to engage in a gas business, even though it was not currently doing

6

so, and that it therefore was a "gas company" within the meaning of Section 9 of the General Tax Act of 1935.[5] Id. at 741.

In so holding, the Colonial court relied upon Southland Steamship Co. v. Dixon, 151 Ga. 216 (106 SE 111) (1921). Southland Steamship Company was a corporation organized as a navigation company and authorized by its charter to do so. Although not then doing business as a navigation company, it had recently acquired the assets of a corporation that was "admittedly a navigation company." Id. at 219. Southland was subject to a tax execution issued by the state for failure to make its tax return to the state comptroller general. It sought an interlocutory injunction against the levy and sale but its petition was denied, and this court affirmed. In so doing, we relied upon a predecessor of OCGA § 48-1-2 (21) enumerating those companies subject to central assessment and required to make returns to the comptroller general. General Tax Act of 1918 (Ga. L. 1918, pp. 43, 76-77).[6] We held that the fact that the company was not

---

[5]The language interpreted by the Court of Appeals in Colonial survives, in somewhat altered form, in OCGA § 48-1-2 (21).

[6] That Act provides, inter alia:

> [A]ll gas, water, electric light or power, steam heat, refrigerated air, dockage, or cranage, canal, toll road, toll bridge, railroad, equipment and navigation companies through their president, general manager or agents having control of the companies' affairs in this State, shall be required to make

presently doing business as a "navigation company" and had "no immediate prospect" of doing so, "would not destroy the power of the company to engage in such business or prevent it from being a navigation company" under the terms of its certificate of incorporation, which included the lengthy recitation of powers and privileges afforded to navigation companies by the State of Georgia and prescribed by statute. Id. at 220, 222. Southland therefore was a "navigation company" within the meaning of the statute. Id.

Here, in contrast, a much more limited charter provision reads in its entirety: "To engage in the natural gas and liquid hydrocarbon pipeline business except that the Corporation shall not have power to construct, maintain and/or operate public utilities within the State of Delaware." Under the analysis employed in Colonial, Southern is therefore authorized under its certificate of incorporation only to act as a "transportation company, or common carrier." 114 Ga. App. at 741. But our analysis does not end there, as we must also consider, as we did in Southland, supra, other statutory or regulatory provisions that place limits upon Southern's "power . . . to engage in such business." Id.

returns of all property of said company located in this State to the Comptroller-General.. . .

8

As an officer of Southern acknowledges by affidavit, Southern "is regulated by the Federal Energy Regulatory Commission ('FERC')" and must be authorized by that body to operate its facility. Its authorization extends only to the operation of a liquid natural gas ("LNG") transfer station located entirely within Chatham County. Unlike the taxpayers in Colonial and Southland, Southern does not appear to be authorized or have the power to "engage in the business" of a gas company or operate a pipeline within the meaning of the various regulatory provisions that we noted in Southern II, 294 Ga. at 659 (1) n. 3.[7] It would not meet the definition of a "gas company" under OCGA § 46-1-1 (5) because it is not "certificated . . . to construct or operate any pipeline or distribution system, or any extension thereof, for the transportation, distribution, or sale of natural or manufactured gas." Nor would it be a "natural-gas company" as defined in 15 USC § 717a (6) because it is not "engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." It does not sell or hold title to the product, but "merely . . . provide[s] a service," receiving LNG owned by others from ships

---

[7] While none of these statutory provisions are directly applicable with respect to Southern's status under OCGA § 48-1-2 (21), they remain indicative of whether the Commissioner has a clear legal duty to accept Southern's ad valorem tax returns.

9

into its facility, converting it to natural gas, and placing that natural gas into pipelines owned by others for distribution. Southern's facility would appear to be, rather, an "LNG terminal" as defined separately in 15 USC § 717a (11).

Under these circumstances, Southern has not shown that the Commissioner, in refusing to accept Southern's ad valorem tax returns, violated a "clear legal duty," that she failed to act, or that her actions were arbitrary, capricious and unreasonable, amounting to a gross abuse of discretion, so as to entitle Southern to a writ of mandamus. Bibb County, supra, Gilmer County, supra. We therefore reverse the judgment of the trial court.

Judgment reversed. All the Justices concur, except Peterson and Grant, JJ., disqualified.

Decided March 6, 2017.

Mandamus. Fulton Superior Court. Before Judge LaGrua.

Samuel S. Olens, Attorney General, W. Wright Banks, Jr., Warren R. Calvert, Alex F. Sponseller, Senior Assistant Attorneys General, Mitchell P. Watkins, Assistant Attorney General, for appellant.

Ragsdale, Beals, Seigler, Patterson & Gray, William J. Seigler III, Herbert H. Gray III, Brian J. Morrissey, Lisa F. Stuckey, for appellee.

10