In the Supreme Court of Georgia

Decided: November 24, 2014

S14A1033/S14X1036. SENTINEL OFFENDER SVCS., LLC v. GLOVER et al.; and vice versa.
S14A1035/S14X1034. SENTINEL OFFENDER SVCS., LLC et al. v. GILYARD et al.; and vice versa.
S14A1037/S14X1038. SENTINEL OFFENDER SVCS., LLC v. TENNILLE et al.; and vice versa.
S14A1039/S14X1040. SENTINEL OFFENDER SVCS., LLC v. OSBORN et al.; and vice versa.
S14A1041/S14X1042. SENTINEL OFFENDER SVCS., LLC v. MARTIN et al.; and vice versa.
S14A1251/S14X1252. SENTINEL OFFENDER SVCS., LLC v. CASH et al.; and vice versa.
S14A1253. ROUNDTREE, SHERIFF v. CASH et al.
S14A1254/S14X1255. SENTINEL OFFENDER SVCS., LLC v. ASHLEY et al.; and vice versa.
S14A1256. ROUNDTREE, SHERIFF v. ASHLEY et al.
S14A1257/S14X1258. SENTINEL OFFENDER SVCS., LLC v. HAYES et al.; and vice versa.
S14A1259. ROUNDTREE, SHERIFF v. HAYES et al.
S14A1260/S14X1261. SENTINEL OFFENDER SVCS., LLC v. STEPHENS et al.; and vice versa.
S14A1262. ROUNDTREE, SHERIFF v. STEPHENS et al.
S14A1263/S14X1264. SENTINEL OFFENDER SVCS., LLC v. BARRETT et al.; and vice versa.
S14A1265. ROUNDTREE, SHERIFF v. BARRETT et al.
S14A1266/S14X1267. SENTINEL OFFENDER SVCS., LLC et al. v. CARTER; and vice versa.
S14A1268. ROUNDTREE, SHERIFF v. CARTER et al.
S14A1269/S14X1270. SENTINEL OFFENDER SVCS., LLC et al. v. HUCKS; and vice versa.
S14A1271/S14X1272. SENTINEL OFFENDER SVCS., LLC et al. v. MANTOOTH; and vice versa.

THOMPSON, Chief Justice.

These cases present constitutional and statutory questions arising from the use of private probation companies by Georgia courts to provide misdemeanor probation supervision services. Thirteen plaintiffs filed individual civil actions against Sentinel Offender Services, LLC, a private for-profit probation servicing entity, and other defendants seeking declaratory and injunctive relief and damages based on claims that Sentinel unlawfully collected probation supervision fees from plaintiffs and violated their due process rights.[1] Among other things, the plaintiffs: (1) challenged the constitutionality of OCGA § 42-8-100 (g) (1), Georgia's private probation statute; (2) alleged that OCGA § 42-8-30.1 precludes tolling of misdemeanor probation sentences and restricts the conditions that may be imposed on probationers in misdemeanor cases including that electronic monitoring is not allowed; (3) challenged Sentinel's authority to provide misdemeanor probation services to the Superior Court of Columbia

---

[1] Five of the cases were filed against Sentinel and various Sentinel employees in Columbia County Superior Court, with the remaining eight filed against Sentinel and others in Richmond County Superior Court. Of the eight Richmond County cases, five were filed as petitions for habeas corpus and additionally named Richmond County State Court Solicitor, Kellie McIntyre, and Richard Roundtree, Sheriff of Richmond County, Georgia as defendants. Moreover, two of the complaints, one in each county, were filed as class actions.

County; and (4) sought to recover from Sentinel probation supervision fees plaintiffs contend Sentinel unlawfully collected from them and other damages. All thirteen actions were assigned as companion cases to Superior Court Judge Daniel J. Craig of the Augusta Judicial Circuit, who conducted joint hearings on various motions filed by the individual plaintiffs and by Sentinel.[2]

On appeal are two consolidated orders entered contemporaneously by the trial court in the pending cases. The trial court issued one order in the five Columbia County cases and another in the eight Richmond County cases. While the two orders differ somewhat with respect to the trial court's findings of fact specific to the cases filed in each county, the trial court determined certain issues of law and fact were common to all the cases before it and entered identical rulings in both orders on these issues. See OCGA § 9-11-42 (a). "It is well settled that a court may take judicial notice of its own records in the immediate

---

[2] These motions included motions to dismiss filed by Sentinel in those Richmond County cases in which the plaintiffs sought habeas relief in addition to their claims against Sentinel, as well as a motion for judgment on the pleadings filed by Sentinel in the Columbia County class action brought by Jacob Martin Glover. Also before the trial court was a motion for partial summary judgment filed by Glover on behalf of himself and the proposed plaintiff class asking the trial court to find: (1) that Sentinel lacked a valid contract to provide probation supervision services to the Superior Court of Columbia County; (2) that OCGA § 42-8-100 (g) (1) is unconstitutional under the Georgia Constitution; (3) that the procedures followed by Sentinel for the collection of its probation supervision fees conflict with rights guaranteed by the Georgia Constitution; and (4) that plaintiffs are entitled to be reimbursed by Sentinel for all fees it collected from them for probation supervision services.

3

case or proceedings before it." Baker v. City of Atlanta, 211 Ga. 34 (83 SE2d 682) (1954) (quoting from Branch v. Branch, 194 Ga. 575, 577 (22 SE2d 124) (1942)). As it appears from the record that the parties acquiesced in the trial court's consolidation of these issues,[3] the trial court was entitled to consider the evidence presented in all thirteen companion cases when ruling on the motions before it. See OCGA § 9-11-42 (a). The trial court's consolidation of these issues has not been specifically challenged by the parties on appeal. See Ford v. Uniroyal Goodrich Tire Co., 267 Ga. 226, 229 n.12 (476 SE2d 565) (1996).

Among other things, the trial court held that OCGA § 42-8-100 (g) (1) was not unconstitutional on its face and did not offend due process or equal protection nor condone imprisonment for debt; ruled that the statutory framework prohibited private probation services from having the sentences of misdemeanor probationers tolled or from collecting fees for electronic monitoring; found the plaintiffs had a right to recover from Sentinel any statutorily unauthorized probation supervision fees Sentinel had collected from

_____

[3] The record reveals that from January 2013 through September 2013, the trial court conducted joint hearings in all 13 cases. Further, at the July 12, 2013 hearing at which counsel for all parties was present, the judge announced he would "take up all of the issues that pertain to both the Columbia County and Richmond County cases today. . . addressing what I think we have before us and that is a motion for partial summary judgment by the Plaintiffs in the case, motion to dismiss by the Defendants in the case, and then motion for class certification."

4

them; and, with respect to the Columbia County plaintiffs, determined that although Sentinel's contract with the superior court of that county had not been properly approved by the county governing authority as statutorily required, mutual mistake and principles of equity prevented Sentinel from having to disgorge any probation supervision fees which would have been lawful for Sentinel to collect under a valid contract. Procedurally, the trial court denied Sentinel's motions to dismiss and motion for judgment on the pleadings,[4] granted in part and denied in part Glover's motion for partial summary judgment, conditionally certified class actions in each county, and granted injunctive relief to the plaintiffs.

All in all, 32 appeals and cross-appeals have been filed in this Court seeking review of these orders.[5] Appellants Sentinel Offender Services, LLC,

---

[4] In this motion filed only in Glover's Columbia County case, Sentinel argued that its technical violations of the private probation statute did not create a private right of action in favor of Glover and against Sentinel for the return of Glover's probation supervision fees, that Glover's claims challenging the validity of his court-ordered supervision fees were barred by res judicata due to his failure to challenge or appeal the sentencing court's order in his underlying criminal case, and that Glover's claims should be dismissed for failing to join the Columbia County Superior Court as an indispensable party.

[5] As the permanent injunctive relief granted by the trial court in this case was not a "matter of routine once the underlying issues of law were resolved," Beauchamp v. Knight, 261 Ga. 608, 609 (409 SE2d 208) (1991), Sentinel's appeals properly invoke this Court's jurisdiction over cases involving equity. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III; Pinkard v. Mendel, 216 Ga. 487, 490 (117 SE2d 336) (1960). Moreover, this Court has exclusive appellate jurisdiction over the

Christina Kapral, Gina A. Childs, Martin M. Murray, Cheryl Bryant and Kayla White (hereinafter collectively referred to as "Sentinel") appeal from the trial court's grant of summary judgment and injunctive relief in each of the thirteen cases as well as from the court's conditional certification of class actions in both Columbia and Richmond counties.[6]  Appellant Richard Roundtree, Sheriff of Richmond County, Georgia (hereinafter "Roundtree"), named as a defendant in five of the Richmond County cases and permitted by the trial court to intervene in a sixth, filed separate appeals from the injunctive relief granted in those six cases.  Finally, all thirteen plaintiffs, Jacob Martin Glover, Willie James Gilyard, Pamela Lynn Tennille, Brandon Tyler Osborn, Lawrence Ruben Martin, Jr., Virginia Cash, Kelvin Ashley, Clifford Hayes, Amanda Stephens, Thomas John Barrett, William Stephen Carter, Kathleen Myrtle Hucks and Nathan Ryan Mantooth, filed individual cross-appeals from the orders entered in their respective cases.

Each of the cases on appeal involves a plaintiff who was convicted of at

constitutional question raised and ruled on by the trial court below and properly before this Court on cross-appeal. See OCGA § 5-6-34 (d).

[6] All thirteen appellees filed response briefs asking this Court to affirm the trial court's orders with respect to these issues.

least one misdemeanor in either Columbia County Superior Court[7] or Richmond County State Court and received a probated sentence which resulted in his or her paying probation supervision fees to Sentinel. The plaintiffs, none of whom directly appealed their misdemeanor convictions or, where probation was revoked, sought discretionary review of their probation revocations, instead filed civil actions in the superior court seeking injunctive relief and damages against Sentinel.

All five of the Columbia County plaintiffs, Glover, Gilyard, Tennille, Osborn and Martin, alleged Sentinel's contract to provide probation services to the Columbia County Superior Court was invalid due to Sentinel's failure to secure approval from the Columbia County Commission as required by OCGA § 42-8-100 (g) (1) and Glover filed his complaint as a class action additionally challenging the constitutionality of OCGA § 42-8-100 (g) (1).[8] Two plaintiffs also alleged that Sentinel illegally modified the terms and conditions of their

---

[7] There is no State Court in Columbia County.

[8] Glover, who filed his class action complaint in Columbia County Superior Court seeking the recovery of probation supervision fees he paid to Sentinel asserting both that Sentinel lacked a valid contract with the Columbia County Superior Court to provide probation supervision services and that OCGA § 42-8-100 (g) (1) was unconstitutional, moved for class certification pursuant to OCGA § 9-11-23 (b) (3).

sentences by adding conditions such as drug screens and treatment programs not included in their original court ordered sentences and swore out warrants for their arrest based, in part, on their failure to comply with these added conditions, while three claimed Sentinel illegally collected or sought to collect excessive supervision fees from them by seeking probation revocation warrants against them after their original probation terms had expired. [9]

The eight Richmond County plaintiffs, Cash, Ashley, Hayes, Stephens, Barrett, Carter, Hucks and Mantooth, made similar claims against Sentinel.

---

[9] Factual findings made by the trial court specific to the Columbia County cases include that the contract executed by Detention Management Services ("DMS"), Sentinel's predecessor entity, and the former Chief Judge of the Augusta Judicial Circuit under which DMS and Sentinel had provided misdemeanor probation services to the Superior Court of Columbia County since the year 2000 had never been approved by the Columbia County governing authority as required by OCGA § 42-9-100 (g) (1); that prior to 2012 no misdemeanor sentence imposed in Columbia County designated Sentinel as the supervising probation service, but instead referred to the "State Probation Office" due to a scrivener's error; that prior to the institution of these lawsuits, no superior court judges presiding over misdemeanor matters in Columbia County from 2000 to 2012 ever questioned the existence of a valid contract between the Court and Sentinel; that misdemeanor probation supervision fees ranged from $30 to $39 per month; that Sentinel was not entitled to collect supervision fees from a probationer after all fines and restitution had been paid unless a condition of probation required further supervision; that there was no evidence that Columbia County superior courts ordered the use of electronic monitoring for any misdemeanor probationers; and that Sentinel maintained sufficient records to determine the source and amount of all types of revenue/income to the corporation. With respect to specific plaintiffs, the trial court found that Sentinel had assumed misdemeanor probation supervision for Gilyard and Osborn and had never sought orders tolling their respective probation terms, but nonetheless sought probation revocation arrest warrants against each man for alleged probation violations after their original probation terms had expired. The court also found that Glover, who was sentenced to serve a 12-month probated sentence and to pay a fine and probation supervision fees, had never been the subject of an arrest warrant by Sentinel and claimed only that Sentinel lacked the authority to collect probation fees from him and others similarly situated due to its failure to comply with the statutory requirements of OCGA § 42-8-100.

Along with challenging the constitutionality of OCGA § 42-8-100 (g) (1), several plaintiffs claimed Sentinel illegally collected excessive supervision fees from them through the unlawful tolling of their misdemeanor sentences and for electronic monitoring and drug and alcohol testing not authorized by the private probation statutory framework. Three of the plaintiffs alleged that the contract between Sentinel and the State Court of Richmond County, Georgia, was illegal and void under OCGA § 13-8-2 (a) (1) as one tending to corrupt the judiciary and two plaintiffs additionally sought to challenge the provisions of OCGA § 15-21A-6 (c) as violating Georgia's constitutional guarantee of the right to counsel. See Alford v. State, 287 Ga. 105 (695 SE2d 1) (2010). Further, four plaintiffs who were in custody at the time, and one about to be incarcerated, filed their actions as petitions for habeas corpus claiming that the revocations of their probation had been unconstitutional and in violation of the mandates of the United States Supreme Court in Bearden v. Georgia, 461 U.S. 660 (103 SCt 2064, 76 LE2d 221) (1983) and the Georgia Court of Appeals in Johnson v. State, 307 Ga. App. 570 (707 SE2d 373) (2011) in that no inquiry had been made as to whether they had wilfully violated the terms of their probation or if

9

they were being held in custody for fines they could not pay.[10] Subsequently,

the trial court granted habeas relief to these plaintiffs based on the court's

determination that they had entered guilty pleas without being afforded the

colloquy required by Boykin v. Alabama, 395 U.S. 238 (89 SCt 1709, 23 LE2d

274) (1969), but refused to dismiss their civil claims against Sentinel.[11] Finally,

---

[10] Facts found by the trial court to be undisputed in the Richmond County cases included that Sentinel was not entitled to continue to collect supervision fees after all fines, restitution, and costs were paid except where a condition of probation required further supervision; that many defendants were ordered by the State Court of Richmond County to submit to electronic monitoring and pay the associated costs to Sentinel; and that affidavits were submitted by Sentinel to State Court judges for issuance of a probation revocation warrant or "show cause order" which were routinely entered into the Georgia Crime Information Center data base with no purposeful search thereafter made to locate the probationer. With respect to individual plaintiffs, the trial court found that Stephens and Cash had been arrested on probation revocation warrants years after their original probation terms had expired and were required to submit to electronic monitoring as a condition of their release from incarceration; that Ashley, who was sentenced in August 2012 for two misdemeanors and required to submit to electronic monitoring and pay fines and fees, had his probation revoked for failure to pay fees in September 2012 and again in November 2012 when he was additionally ordered to enroll in an in-patient alcohol treatment program despite claiming that he could not afford to pay the electronic monitoring; and that Mantooth, who received a 12-month probated sentence on January 23, 2013 for improper lane change, paid his fine in full at the time of sentencing, completed his driver improvement course one week later and twice attempted to deliver his certificate of completion to Sentinel in February 2013 only to be told his case had not yet been entered into the computer, was stopped on March 18, 2013 for failure to wear a seatbelt and was taken into custody on a probation revocation warrant sworn out by Sentinel employee on February 26, 2013 charging him with failing to pay court-ordered supervision fees.

[11] Sentinel moved to dismiss these habeas petitioners' remaining claims against it as moot following the trial court's grant of the habeas relief requested. However, OCGA § 9-11-18 allows a party asserting a claim for relief as an original claim to join either as an independent or alternative claim, as many claims as he has against the opposing parties. As nothing in the habeas corpus statute prohibits the joinder of other claims, we see no reason why a petitioner in a habeas case cannot include claims against other parties necessary for the adjudication of a controversy. See Southern LNG, Inc. v. MacGinnitie, 294 Ga. 657, 667 (755 SE2d 683) (2014); Johnson v. Caldwell, 229 Ga. 548, 552 (192 SE2d 900) (1972) (Civil Practice Act applies to habeas corpus proceedings); OCGA § 9-11-81. Thus, at least as to the habeas petitioners' claims for money damages, the trial court

10

one of the plaintiffs, Mantooth, filed a class action complaint seeking declaratory and injunctive relief pursuant to OCGA § 9-11-23 (b) (1) and (b) (3).[12]

Although the facts in the individual cases have not been fully developed given the procedural posture of the appeals before us, we find the legal issues on appeal and cross-appeal were properly raised in some, if not all, of the cases below.[13] We further note that all of the trial court's substantive rulings have been challenged on appeal by either the appellants or cross-appellants. Specific facts relied on by this Court will be identified as necessary.[14] For the reasons

---

properly denied Sentinel's motion.

[12] Mantooth, who filed his suit against Sentinel for false arrest and imprisonment in Richmond County Superior Court claiming Sentinel employees wrongfully swore out a warrant for his arrest in order to collect probation supervision fees from him to which Sentinel was not entitled because he had fully paid his fine and completed the terms of his probation, sought certification of a class for declaratory and injunctive relief pursuant to OCGA § 9-11-23 (b) (1) and (b) (2) seeking to enjoin Sentinel's practice of causing arrest warrants to be issued against misdemeanor probationers in order to collect supervision fees. As required by OCGA § 9-4-7 (c), Mantooth served a copy of his complaint on the Attorney General.

[13] We have considered the entirety of evidence contained in the records in all thirteen companion cases in deciding these issues. See Coleman v. State, 215 Ga. 865, 868 (114 SE2d 2) (1960) (reviewing court may take judicial notice of evidence appearing in the record of a companion case before the court).

[14] "On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." Shekhawat v. Jones, 293 Ga. 468, 469 (746 SE2d 89) (2013) (quoting Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd., 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001)).

which follow, we affirm in part and reverse in part the judgments of the trial court, and we remand the cases with direction.

1. As a preliminary matter, we note that little focus has been placed on the justiciability of the various claims raised by the individual plaintiffs in these cases. After careful review of the records and briefs, we have determined that at least one plaintiff presents in a properly justiciable form each of the substantive legal issues that the trial court decided in its consolidated orders and that we decide below. On remand, however, the trial court is directed to consider the justiciability of each claim as raised by each plaintiff or as applicable to other persons affected by any injunctive or class relief.

We find no merit to the blanket contention by Sentinel that all the plaintiffs are precluded from bringing civil actions against it for money had and received, false arrest, and injunctive relief due to their failure to appeal their underlying criminal convictions and sentences. With respect to the Columbia County plaintiffs, the record clearly establishes that prior to the filing of these cases in 2012, no misdemeanor sentence imposed by the Superior Court of Columbia County designated Sentinel as the supervising probation service. Instead, all of the misdemeanor sentences imposed on the plaintiffs by the courts

of that county referred only to the "State Probation Office." Thus, at the time of conviction or revocation for these Columbia County plaintiffs there existed no basis for them to appeal their validly imposed sentences on the grounds that probation supervision by private companies is facially unconstitutional or that the county did not have a valid contract with Sentinel. See Owens v. Hill, 295 Ga. 302, 305 (2) (758 SE2d 794) (2014) (where criminal defendant faces allegedly illegal conduct related to the implementation of his or her sentence which cannot be challenged through a direct appeal of the conviction and sentence or through a habeas corpus action, declaratory or injunctive relief may be sought in a collateral civil action).

Likewise, to the extent that the Columbia County and Richmond County plaintiffs' claims are based not on their criminal judgments or on what those judgments directed Sentinel to do, res judicata would not bar these claims. See id. This would include claims based on Sentinel's allegedly tortious conduct in falsely swearing out probation revocation warrants against plaintiffs after the payment of all fines, costs, and restitution or the expiration of their sentences, or swearing out warrants based on a plaintiff's failure to comply with probation conditions not imposed by the sentencing court but rather unilaterally added by

13

Sentinel; however, we note that, to the extent that the plaintiffs challenge Sentinel's allegedly tortious conduct that was *not* authorized by the sentencing court, the trial court did not decide those claims and we do not decide them either.

On the other hand, where a plaintiff's claim could have been raised in a direct appeal, res judicata normally would preclude the same claim from being raised against the State or its privies, including persons or entities executing the judgment, in a subsequent civil action, although claims based on an allegedly illegal sentence might be raised in the sentencing or habeas court, if they have not become moot.[15] See Div. 4 (c), infra. The trial court should address these res judicata issues with respect to each plaintiff's specific claims on remand. The proper application of these principles should mean that the civil court's order, and particularly any equitable relief granted, does not directly conflict

---

[15] A criminal defendant who litigated, or had the full and fair opportunity to litigate, a claim at trial or on direct appeal is normally precluded from raising that same claim in a subsequent civil action against someone acting at the direction of the criminal court. See OCGA § 9-12-40 ("A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."). "Claim" or "cause of action" in this context does not mean the specific theory of recovery or defense asserted; instead, "when a subsequent action arises from the same wrong as a prior action and is based on essentially the same facts, the subsequent action should be barred by res judicata." Franklin v. Gwinnett County Public Schools, 200 Ga. App. 20, 25 (1991) (citing Spence v. Erwin, 200 Ga. 672, 674 (1946)).

14

with the prior judgment of the criminal court, although there may be incidental effects.  See Owens v. Hill, supra; OCGA § 9-5-2.

In addition, on remand the trial court must address justiciability questions regarding the court's jurisdiction to address each claim raised by each plaintiff, including standing,[16] ripeness[17] and mootness.[18]

---

[16] We have held that a litigant has standing to challenge a criminal law, even on First Amendment grounds and even when seeking only a declaratory judgment, "'only if the law has an adverse impact on that litigant's own rights,'" which means that the litigant must establish a "threat of injury in fact" that is "'actual and imminent, not conjectural or hypothetical.'" Manlove v. United Government of Athens-Clarke County, 285 Ga. 37, 638 (680 SE2d 405) (2009) (citations omitted). "'[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if unaccompanied by any continuing, present adverse effects.'"  City of Los Angeles v. Lyons, 461 U. S. 95, 102 (103 SCt 1660) (1983).  See also Manlove, 285 Ga. at 638.

[17] Even within a criminal case, we have indicated that a challenge to the legality of a sentencing statute may not be ripe for judicial review until the defendant has been convicted.  See, e.g., Brinkley v. State, 291 Ga. 195, 196 (728 SE2d 598) (2012) ("The first opportunity a defendant has to bring a constitutional attack against a sentencing statute, as opposed to other types of statute, may come only after the guilty verdict is returned and the sentencing issue becomes ripe."); Woods v. State, 279 Ga. 28, 29 (608 SE2d 631) (2005) ("[I]t is questionable whether the defendant would even have standing to assert such a claim prior to the time that the statute is imposed against him."); Green v. State, 244 Ga. 755, 756 (262 SE2d 68) (1979) (holding that a defendant could not contest a statute limiting parole until he claimed a right of parole and the statute was asserted against him as a bar).

[18] Normally, once a sentence has expired, a claim for prospective relief regarding the legality of the sentence is moot.  See Baker v. State, 240 Ga. 431, 432 (241 SE2d 187) (1978).  See also Miller v. State, 288 Ga. 153, 154 (702 SE2d 137) (2010) (holding that Miller's appeal challenging his partial sentence revocation was moot because that revocation had been suspended, even though he remained under his original probation sentence, explaining that "'[w]hile a matter does not become moot if adverse collateral consequences continue to plague the affected party, [Miller has] not shown adverse collateral consequences on the record, and we decline to presume them under these circumstances.'" (citations omitted)).  While it appears that many of the plaintiffs' claims were not moot when these lawsuits were filed in 2012 because the plaintiffs were still serving their misdemeanor probation sentences, whether those claims remained suitable for decision by the time the trial court entered its judgments in September 2013, and whether the claims will remain live for

2. Turning to the substantive challenges raised, we first address plaintiffs'

constitutional challenge to OCGA § 42-8-100 (g) (1), Georgia's private

probation statute, which provides, in pertinent part:

> The chief judge of any court within the county . . . is authorized to enter into written contracts with corporations . . . to provide probation supervision, counseling, collection services for all moneys to be paid by a defendant according to the terms of a sentence imposed on the defendant as well as any moneys which by operation of law are to be paid by the defendant in consequence of the conviction, and other probation services for persons convicted in that court and placed on probation in the county.

Plaintiffs contend this statute is facially invalid because it allows courts to

contract with private, for-profit entities to provide probation supervision

services to misdemeanor probationers without setting forth any guidelines for

contractual requirements regarding how these companies are to be paid and

without placing any limitations or restrictions on the cost or amount of fees

which can be passed on to the public. Plaintiffs assert that, as a result, the

statute improperly allows courts to delegate the provision of probation services

---

decision on remand, requires careful consideration.

With regard to our own jurisdiction to decide these cases, we are cognizant of the fact that several plaintiffs in both Columbia and Richmond Counties sought, and were granted, temporary restraining orders against Sentinel preventing it from swearing out new warrants against them during the course of these actions, so that their sentences arguably would have continued if our rulings effectively reversed those orders. Moreover, to the extent that the claims for money had and received seeking *damages* for fees paid in the past are not precluded, those claims may not be moot even after the term of the sentence has expired.

16

to private companies whose employees act as officers of the court, but who owe a duty of loyalty to the for-profit companies which employ them. Plaintiffs argue that by permitting courts to outsource probation supervision services to private, for-profit entities, this statute deprives misdemeanor probationers of their constitutional rights to due process of law and equal protection under the Georgia Constitution of 1983, Art. I, Sec. I, Par. I and II, while condoning imprisonment for debt in violation of the Georgia Constitution of 1983, Art. I, Sec. I, Par. XXIII.

Plaintiffs claim that the statute is unconstitutional on its face because the privatization of probation supervision services systemically denies misdemeanor probationers of their liberty or property without due process of law. We disagree.

(a) In addressing plaintiffs' facial challenge to the constitutionality of the private probation statute, we are cognizant of the fact that

> all presumptions are in favor of the constitutionality of an [A]ct of the legislature and that before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this [C]ourt must be clearly satisfied of its unconstitutionality.

(Citations and punctuation omitted.) JIG Real Estate, LLC v. Countrywide

Home Loans, Inc., 289 Ga. 488, 490 (2) (712 SE2d 838) (2011). Moreover, where, as here, a party's First Amendment rights are not implicated, the party mounting the challenge can succeed only "by establish[ing] that no set of circumstances exists under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications, or at least that the statute lacks a plainly legitimate sweep." (Citation and punctuation omitted.) Blevins v. Dade County Bd. of Tax Assessors, 288 Ga. 113, 118 (3) (702 SE2d 145) (2010).

On its face, OCGA § 42-8-100 (g) (1) simply gives courts the authority to contract with private providers for the administration of probation services. Plaintiffs contend, however, that because the statute does not limit or restrict the manner in which courts contract with these private entities, the statute allows courts to contract with private companies in a manner which ties company profits to how long a misdemeanant is kept on probation and how many services such as electronic monitoring or drug screening are imposed, thus creating a conflict of interest for company employees acting as private probation officers and serving as officers of the court.[19] See Wolcott v. State, 278 Ga. 664, 665 (604 SE2d 478) (2004) ("[P]robation officer's primary duty is to represent the

_____

[19] Plaintiffs claim, and there is evidence showing, that certain Sentinel employees received bonuses based on Sentinel's profitability.

18

interest of justice and not the interest of his or her employer."); Huzzie v. State, 253 Ga. App. 225, 226 (558 SE2d 767) (2002) (probation officers aid sentencing courts by serving as an investigative and supervisory arm of the court). Plaintiffs assert that because sentencing courts rely on the recommendations of private probation officers who have a pecuniary interest in recommending one course of action to the court over another, probationers' due process rights to fair, impartial tribunals, untainted by conflicting financial interests, are violated. Further, plaintiffs assert that under the private probation system thus created, courts are encouraged by private probation officers to impose excessive and improper probation supervision services on probationers who subsequently are imprisoned when they are unable to pay the fees associated with the supervision services imposed.

While the supervision of probation is a function historically performed by state probation officers, the mere act of privatizing these services does not violate due process. Nothing on the face of the statute allows Sentinel or any other private probation company to deprive an individual of his or her property or liberty without due process of law nor is there anything which authorizes the creation of a private probation system that is so fundamentally unfair that it fails

to comport with our notions of due process. The due process clause does not prohibit the State from entering into a contract with a private entity for the provision of probation supervision services but requires that when it chooses to do so the State continue to provide due process to individuals under its supervision. As found by the trial court, most of the injuries alleged by the plaintiffs in these cases occurred not because of Sentinel's compliance with the restrictions placed upon it by the private probation statutory framework, but because of Sentinel's failure or the failure of its employees to abide by the limited statutory authority granted.

Importantly, under this framework it is the sentencing court which decides whether or not to probate a defendant's sentence and determines the conditions under which such probation shall occur. See OCGA § 17-10-1 (a) (1). Further, it is the sentencing court which bears the responsibility for determining whether a probationer has the ability to make court-ordered payments, including the payment of fees, and to consider alternative measures of punishment other than imprisonment where a probationer is unable to do so. See Bearden, supra, 461 U.S. at 672 (if probationer is unable to pay despite bona fide efforts, the sentencing court must consider alternative measures of punishment other than

imprisonment); Johnson v. State, supra, 307 Ga. App. at 573; McMahon v. State, 284 Ga. App. 192, 194 (643 SE2d 236) (2007) (should defendant be unable to pay, the protection of his constitutional rights will be governed by the principles in Bearden). Nothing on the face of the statute allows for the imposition of unreasonable or illegal fees on probationers by the sentencing court, nor permits the court to improperly delegate its duties under Bearden to probation officers. Accordingly, while we are concerned by the allegations made and evidence presented in these cases, we agree with the trial court that most of the alleged injuries suffered by the plaintiffs are not a consequence of the privatization of probation services per se, but rather result from wrongful acts allegedly committed by Sentinel employees.

(b) To the extent plaintiffs argue that the statute is unconstitutional as applied, we find the trial court did not distinctly rule on this issue in its orders. Despite expressing concern over Sentinel's treatment of alleged probation violators and the manner in which Sentinel sought probation revocations, the trial court concluded that any injuries or takings by Sentinel under the auspices of its role as probation supervisor had not been authorized by the statute. This Court will not rule on a constitutional question "unless it clearly appears in the

21

record that the point was directly and properly made in the court below and distinctly passed on by the trial judge." Pitts v. G.M.A.C., 231 Ga. 54, 56 (199 SE2d 902) (1973). As the trial court did not address plaintiffs' constitutional challenges to the statute as applied, these arguments cannot be considered in this appeal. See Marks v. State, 280 Ga. 70 (4) (623 SE2d 504) (2005).

(c) We agree with the trial court that the statute does not on its face unconstitutionally condone imprisonment for debt. As noted by the trial court, all the plaintiffs in these actions were convicted of misdemeanors and placed on probation as an alternative to incarceration. See Tuttle v. State, 215 Ga. App. 396, 397 (450 SE2d 863) (1994). This Court has recognized a distinction between imprisonment for debt and imprisonment for criminal behavior. See Connally v. State, 265 Ga. 563 (458 SE2d 336) (1995) (Georgia constitution does not forbid imprisonment for criminal conduct, even though the criminal conduct also results in a civil debt). Accordingly, we hold the statute does not on its face condone imprisonment for debt as alleged by the plaintiffs.

3. In ruling on plaintiffs' challenge to OCGA § 42-8-100 (g) (1), the trial court determined as a matter of law that the private probation statutory framework prohibits the tolling of sentences imposed on defendants supervised

22

by private probation servicing entities and also prohibits the imposition on these defendants of any conditions of probation statutorily reserved to the State Department of Corrections (hereinafter the "DOC"). We now review these rulings.

(a) Article 2. The administration of probation in this State is governed by Chapter 8 of Title 42 of the Official Code of Georgia Annotated, the provisions of which are divided into Articles 1 through 9. Article 2,[20] also known as the "State-wide Probation Act," sets forth a state-wide probation system created for felony offenders "to be administered by the Department of Corrections." OCGA § 42-8-22. OCGA § 42-8-30.1 which is located in Article 2, provides:

> In any county where the chief judge of the superior court, state court, municipal court, probate court, or magistrate court has provided for probation services for such court through agreement with a private corporation, enterprise, or agency or has established a county or municipal probation system for such court pursuant to Code Section 42-8-100, *the provisions of this article relating to probation supervision services shall not apply to defendants sentenced in any such court.*

(Emphasis supplied.) Based on this statutory language, the trial court determined that none of the provisions of Article 2, including OCGA § 42-8-36,

---

[20] Article 2 encompasses the statutory provisions set forth in OCGA §§ 42-8-20 through 42-8-44.

which allows probationers' sentences to be tolled under certain circumstances,[21] and OCGA § 42-8-35 (a) (14), which permits a court to impose electronic monitoring as a condition of probation, were applicable to misdemeanor probationers supervised by private probation officers.[22]

Sentinel and Roundtree assert that the statutory language of OCGA § 42-8-30.1 should be interpreted to render only certain provisions of Article 2 inapplicable to misdemeanor defendants.[23] They argue that the trial court's interpretation is improper in that it relegates the descriptive phrase "relating to probation supervision services" to mere surplusage. We disagree.

> [T]he fundamental rules of statutory construction require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to look diligently for the intention of the General Assembly.

[21] OCGA § 42-8-36 allows for the "tolling" of a probationer's sentence based on the probationer's failure to report to his or her probation supervisor or to the court as required.

[22] Other provisions found excluded by the trial court were those authorizing a court to require probationers to submit to drug and alcohol screening (OCGA § 42-8-35.7) or to require probationers to undergo mental health screening and counseling (OCGA § 42-8-35.6).

[23] Sentinel and Roundtree suggest that those provisions of Article 2 detailing the educational requirements and duties of probation supervisors and those setting the fees which can be charged probationers for supervision services all relate to probation supervision services, but claim that those provisions which provide for the imposition of electronic monitoring and drug screening, including the manner in which fees for these services are to be assessed and collected, do not - despite the fact that the provision of these services are part of Sentinel's contract with the court.

Atlanta Independent School System v. Atlanta Neighborhood Charter School, Inc., 293 Ga. 629, 631 (748 SE2d 884) (2013).

> We construe statutes in connection and in harmony with the existing law, and as part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and decisions of the courts.

(Citations and punctuation omitted.) Chase v. State, 285 Ga. 693, 695-696 (2) (681 SE2d 116) (2009).

In determining the proper meaning of "relating to probation supervision services," as used in the statute, we note that the phrase "probation supervision services" is not defined in either the Code or case law. Based on our review of Article 2, we find it difficult to determine which provisions contained therein would fall within the limited exclusion proposed by appellants. Indeed, a close examination of Article 2 reveals that there are no whole sections of that article, and not even whole subsections, that appear clearly limited to supervision "services." Given the difficulties that arise in trying to read "probation supervision services" as relating only to certain provisions of Article 2, it is doubtful that the General Assembly intended for such an interpretation. When read along with the rest of Article 2 and the Code as a whole, OCGA § 42-8-

30.1 is most naturally interpreted so that the phrase "relating to probation supervision services" describes "this article" rather than particular "provisions of this article." It was not meaningless surplusage to include a general description of "this article," particularly as § 42-8-30.1 was not enacted or amended along with the rest of Article 2, and the General Assembly has used similar formulations elsewhere in the Code. See, e.g., OCGA §§ 10-2-22, 40-1-55. Accordingly, we agree with the trial court that none of the provisions of the State-wide Probation Act are applicable to defendants sentenced in courts utilizing probation systems authorized by OCGA § 42-8-100 (g) (1).

Our inquiry does not end here, however, as we must determine whether any authority exists outside the provisions of Article 2 for the application of tolling or electronic monitoring to misdemeanor probationers.

(b) Tolling. We agree with the trial court that under current Georgia statutes, the tolling of a misdemeanor probationer's sentence is not permitted. "Statutes providing for the suspension of a sentence or the probation of a defendant must be strictly followed." Cross v. Huff, 208 Ga. 392, 396 (67 SE2d 124) (1951); Entrekin v. State, 147 Ga. App. 724 (250 SE2d 177 (1978). See also Tenney v. State, 194 Ga. App. 820 (392 SE2d 294) (1990). As found

26

above, courts utilizing probation systems established pursuant to OCGA § 42-8-100 (g) (1) are specifically precluded from applying the provisions of the State-wide Probation Act, including those pertaining to tolling, to the defendants they sentence and we find no other grounds for such activity under Georgia statutory law. Unlike the statutes governing the supervision of felony probationers by the state DOC, there is no statute governing misdemeanor probationers which specifically authorizes the tolling of a probationer's sentence.[24] Rather, with respect to a misdemeanor conviction, sentences are fixed at one year and once a sentence has been served, jurisdiction over the defendant ceases. See OCGA § 17-10-3; State v. Mills, 268 Ga. 873, 874 (495 SE2d 1) (1998) (requiring State to seek probation revocation within the period of probation as required by statute); State v. Mohamed, 203 Ga. App. 21 (416 SE2d 358) (1992).

Accordingly, we affirm the trial court's holding that the private probation statutory framework does not allow for the tolling of misdemeanor probationers'

---

[24] Statutes specific to misdemeanor probation systems are codified in Article 6 of Title 42, Chapter 8, which encompasses code sections 42-8-100 through 42-8-108. While subsection (c) of OCGA § 42-8-100 specifically allows a court to suspend or probate a defendant's sentence and subsection (e) of that statute empowers a judge to revoke, modify or change a probated sentence "at any time during the period of time originally prescribed for the probated sentence to run," neither subsection contemplates the tolling of a probationer's sentence based on his or her alleged status as a fugitive as specifically allowed by the tolling provisions found in Article 2.

sentences.[25]  To the extent Georgia courts have recognized OCGA § 42-8-36 as a basis for allowing courts utilizing probation systems established pursuant to OCGA § 42-8-100 (g) (1) to toll a probationer's sentence, such analysis was in error and hereby is disapproved.  See, e.g., Wilson v. State, 292 Ga. App. 540 (664 SE2d 890) (2008); Vincent v. State, 271 Ga. App. 138 (608 SE2d 748) (2004).

(c)  Electronic monitoring.  Electronic monitoring is a condition of probation which does not necessarily require explicit statutory authority in order to be imposed.  See Ballenger v. State, 210 Ga. App. 627, 628 (436 SE2d 793) (1993).  OCGA § 17-10-1 (1) (a) permits a sentencing judge to suspend or probate all or any part of a defendant's sentence "under such rules and regulations as the judge deems proper."  Judges operating within Georgia's private probation statutory framework retain this power. See OCGA § 42-8-100 (c) and (e).  The only restriction on a sentencing court is that the conditions of probation it imposes be reasonable.  See State v. Pless, 282 Ga. 58, 60 (646

---

[25]  About tolling, we decide only that no provision of the Code upon which Sentinel and Roundtree rely in this case, including OCGA § 42-8-36, authorized the tolling of misdemeanor probation sentences.  We have no occasion here to consider whether such tolling might be permissible as a matter of common law, see Anderson v. Corall, 263 U. S. 193 (44 SCt 43, 68 LE2d 247) (1923), and if so, whether the common law in this respect has been abrogated by legislation. The parties have not briefed those questions, and we, therefore, do not decide them.

SE2d 202) (2007) (probation and suspension statutes vest broad discretion in trial judges to impose any reasonable condition of probation); Penaherrera v. State, 211 Ga. App. 162, 163 (438 SE2d 661) (1993). Accordingly, we find the trial court erred in holding that the imposition of electronic monitoring on misdemeanor defendants is prohibited. The fact that electronic monitoring and other conditions of probation are described in Article 2 as acceptable sentencing options for felony probationers supervised by the DOC, does not, in and of itself, prohibit the application of these conditions to misdemeanor probationers supervised by private probation servicing companies.

4. Having affirmed the trial court's rulings with respect to the constitutionality of OCGA § 42-8-100 (g) (1) and having addressed the proper statutory interpretation of OCGA § 42-8-30.1, we now consider whether the trial court erred in finding that the plaintiffs have a right of recovery against Sentinel under the doctrine of money had and received for any probation supervision fees Sentinel collected from the plaintiffs that were not lawfully imposed.

(a) The trial court granted Glover's motion for partial summary judgment and denied Sentinel's motion for judgment on the pleadings with respect to the plaintiffs' right to bring a claim against Sentinel for money had and received.

Specifically, the trial court found plaintiffs had a right of recovery as to any fees they paid to Sentinel for probation supervision services rendered after their original sentences had expired or for electronic monitoring.

Sentinel argues the plaintiffs have no private right of action to challenge the validity of its contracts to provide private probation services to the Columbia County and Richmond County courts or to seek the return of probation supervision fees plaintiffs were ordered to pay by the sentencing court. Plaintiffs, on the other hand, assert Sentinel was unjustly enriched at their expense when it collected probation supervision fees from them in excess of those authorized by the sentencing court or which were authorized by the court unlawfully and contend that they are entitled to recover these fees from Sentinel.[26]

> An action for money had and received is founded upon the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it. [Cits.]

Haugabook v. Crisler, 297 Ga. App. 428, 431 (677 SE2d 355) (2009) (quoting

---

[26] The issue of whether the plaintiffs had a right of action against Sentinel for money had and received was before the trial court both on Sentinel's motion for judgment on the pleadings and Glover's motion for partial summary judgment filed on his own behalf and that of the proposed plaintiff class.

<u>Jasper School Dist. v. Gormley</u>, 184 Ga. 756, 758 (193 SE 248) (1937)).

In general, we agree with the trial court's determination that a cause of action based on the theory of money had and received could be brought against Sentinel to recover probation supervision fees which it unlawfully collected from misdemeanor probationers in contravention of the dictates of the private probation statutory framework approved by the Georgia legislature. The evidence shows that Sentinel entered into, or attempted to enter into, "no-cost" contracts with the Columbia County and Richmond County courts pursuant to which Sentinel agreed to charge the courts nothing for probation services and to instead collect probation supervision fees directly from misdemeanor probationers. As a result, Sentinel placed itself in the position of potentially receiving and retaining money from the plaintiffs which the plaintiffs were not lawfully required to pay and which Sentinel was not lawfully entitled to receive. It is immaterial for purposes of plaintiffs' right to recover these fees from Sentinel that the sentencing court wrongly believed it had the statutory authority to impose these fees. We find error, however, in the trial court's application of this ruling to the specific facts before it.

(b) With respect to the Columbia County plaintiffs' ability to recover

probation supervision fees paid to Sentinel under the terms of an invalid contract, we find the trial court erred in holding that the doctrine of mutual mistake and the principles of equity prevent Sentinel from having to disgorge any probation supervision fees Sentinel collected from them which the sentencing court had the ability to lawfully impose. Under Georgia law, a private probation company can act as a probation provider and its employees may serve as probation officers only if the company complies with the terms and provisions of OCGA § 42-8-100 (g) (1). This statute states in pertinent part:

> The final contract negotiated by the chief judge with the private probation entity shall be attached to the approval by the governing authority of the county to privatize probation services as an exhibit thereto.

That the statute contemplates county approval of the actual contract for such services rather than approval for the privatization of probation services in general is evidenced by the statutory language immediately following which provides:

> The termination of a contract for probation services as provided for in this subsection . . . shall be initiated by the chief judge of the court which entered into the contract, and subject to approval by the governing authority of the county which entered into the contract. . .

Because the record supports the trial court's finding that there never was an

32

approved contract for probation services between Sentinel and the Columbia County governing authority within the contemplation and provisions of the statute, we agree that Sentinel's contract with Columbia County is invalid. [27]

Purported contracts with public entities that are entered without observance of the legal requirements are ultra vires and void. See City of Baldwin v. Woodard & Curran, Inc., 293 Ga. 19, 27-29 (743 SE2d 381) (2013) (contract with the city which had not been properly approved as required by the city charter was ultra vires and void); H.G. Brown Family Ltd. Partnership v. City of Villa Rica, 278 Ga. 819, 820 (607 SE2d 883) (2004). Without a valid contract, Sentinel lacked the statutory authority to provide probation supervision services to the Superior Court of Columbia County and thus had no right to collect probation supervision fees from the plaintiffs.

Despite properly finding that Sentinel's contract with Columbia County was invalid, the trial court determined there was a mutual mistake on the part of both Sentinel and the Columbia County courts regarding the omission to secure approval for the contract from the governing authority, thus the principles of

---

[27] Sentinel has failed to come forward with any evidence showing that the statutory requirements were, in fact, met, thus summary judgment on this issue is appropriate. See OCGA § 9-11-56 (e); Cowart v. Widener, 287 Ga. 622, 623 (697 SE2d 779) (2010).

equity would apply to allow Sentinel to retain unauthorized fees it had collected.

This holding is in error. See City of Baldwin, supra at 28 (recovery under an equitable doctrine not allowed where contract is ultra vires and void even though party seeking recovery has performed its part of the bargain and relied upon the contract to its detriment). Just as equity would not be available to aid Sentinel in recovering payment for the performance of probation supervision services under the void contract, equity will not protect Sentinel from having to disgorge that which it unlawfully received. Nor can Sentinel rely on the fact that the plaintiffs were ordered by the court to pay probation supervision fees as justification for its retention of fees it illegally collected. Absent a valid contract, it similarly was not within the lawful power of the Columbia County courts to require probationers to submit to probation supervision provided by Sentinel or any other unauthorized person or entity, thus it was unlawful for Sentinel to extract payment from the plaintiffs for the performance of these services.

Payments made under a void contract are recoverable in an action for money had and received. See Howard v. Brantley County, 260 Ga. App. 330 (579 SE2d 758) (2003). Accordingly, the trial court erred in holding Sentinel

would not be required to disgorge probation supervision fees it collected from the Columbia County plaintiffs under an invalid contract.

(c)  In the Richmond County cases, the validity and proper execution of Sentinel's contract to provide private probation services to the Richmond County State Court was not at issue.  Because Sentinel was an authorized private probation service provider in Richmond County pursuant to a valid contract, the trial court determined that the Richmond County plaintiffs had no right of recovery against Sentinel for any probation supervision fees they paid during the original terms of their probated sentences, but did have a right of recovery against Sentinel for any probation fees they paid after the expiration of the term of their original sentences or for electronic monitoring.  While we agree with the trial court that a potential cause of action under a theory of money had and received exists for these plaintiffs to recover such fees paid after the expiration of their original sentences, see Div. 3 (b) supra, we note that the justiciability of each plaintiff's claim in the *trial* court would be dependent on the particular facts of his or her case, including whether or not these additional fees were paid following a revocation hearing and pursuant to a court order which could have been appealed or were paid without benefit of a hearing or entry of an

35

appealable order. To the extent a plaintiff was required to pay additional unauthorized fees pursuant to an appealable criminal court order, that order cannot be collaterally challenged. However, such plaintiffs might return to the sentencing court to challenge their sentence as illegal or possibly seek relief through the filing of a habeas corpus petition,[28] with the potential to recover monies paid pursuant to an illegal sentence. See Nazario v. State, 293 Ga. 480, 488 (746 SE2d 109) (2013); Williams v. State, 287 Ga. 192, 193 (695 SE2d 244) (2010); Harper v. State, 286 Ga. 216, 217 n.1 (686 SE2d 786) (2009). Compare Colorado v. Noel, 134 P3d 484 (Colo. App. 2005) (defendant not entitled to refund of probation supervision fees where conviction vacated) with Cooper v. Gordon, 389 So2d 318, 319 (Fla. 3rd DCA 1980) (probation service fees paid under a reversed conviction may be recoverable).

(d) Finally, we reverse the trial court's ruling with respect to any electronic monitoring fees imposed by the sentencing court and collected by Sentinel for monitoring services rendered during a probationer's original term of sentence. See Div. 3 (c) supra. Only where electronic monitoring was

---

[28] We note that five of the Richmond County plaintiffs filed habeas petitions following the revocation of their probation on allegedly improper Sentinel warrants challenging both their underlying convictions as well as the validity of the sentencing court's order revoking their probation.

unlawfully imposed by the court on a misdemeanor probationer after the expiration of his or her original sentence would such fees potentially be recoverable.

5. Sentinel challenges the trial court's certification of class actions against it in both Columbia and Richmond counties. In Columbia County, Glover moved pursuant to OCGA § 9-11-23 (b) (3) for certification of a class of plaintiffs seeking the recovery of probation supervision fees paid to Sentinel asserting both that Sentinel lacked a valid contract with the Columbia County Superior Court to provide probation supervision services and that Georgia's private probation statute, OCGA § 42-8-100 (g) (1), was unconstitutional. In Richmond County, Mantooth filed suit against Sentinel for false arrest and imprisonment in Richmond County Superior Court claiming Sentinel employees wrongfully swore out a warrant for his arrest in order to collect probation supervision fees from him to which Sentinel was not entitled because he had fully paid his fine and completed the terms of his probation. In his action, Mantooth sought certification of a class for declaratory and injunctive relief pursuant to OCGA § 9-11-23 (b) (1) and (b) (2) to enjoin Sentinel from unlawfully causing arrest warrants to be issued against misdemeanor

probationers. The trial court noted that all the plaintiffs could be considered members of the classes described by Glover and Mantooth and conditionally granted Glover's motion for class certification pursuant to OCGA § 9-11-23 (b) (3) as well as the class-wide declaratory and injunctive relief sought by Mantooth.

Granting Glover's motion for class certification, the trial court included all the plaintiffs in the companion cases as putative class members by conditionally certifying classes in both Columbia and Richmond counties. Consistent with its decisions on the constitutional, statutory and legal issues presented, the trial court conditionally certified a class in Columbia County consisting of "persons who have paid any fees to Sentinel after expiration of the original term of their sentences" but deferred ruling on whether Glover was a proper class representative and whether proceedings on behalf of the class should be proved in Columbia County Superior Court or Richmond County Superior Court. In Richmond County, the trial court conditionally certified a class consisting of "persons who have paid any fees to Sentinel after expiration of the original term of their sentences or who have paid Sentinel for electronic monitoring at any time during their probation," and designated Mantooth as the

38

class representative.

Sentinel complains that the trial court's class certifications were in error while the plaintiffs assert this issue is not ripe for review by this Court given that class certification was only conditionally granted and the trial court deferred ruling on several important issues. "Whether to certify a class is a matter committed to the discretion of the trial court." Georgia-Pacific Consumer Products, LP v. Ratner, 295 Ga. 524 (762 SE2d 419) (2014). On appellate review, this Court will respect the discretion of the trial judge in certifying or refusing to certify a class action where that discretion has not been abused. See State Farm Mut. Auto. Ins. Co. v. Mabry, 274 Ga. 498, 499-500(1) (556 SE2d 114) (2001). We, however, do not in these appeals address the propriety of the trial court's conditional grants of class certification because the trial court's grant of such relief was based on rulings which have been reversed or are otherwise affected by our decision today. Accordingly, those parts of the trial court's orders conditionally certifying class actions in Columbia and Richmond counties are reversed and the cases remanded to the trial court for reconsideration of the class certification issues in light of this opinion. In doing so, the trial court must carefully consider issues of justiciability with respect to

the scope of any class certified and the relief available to potential class members.  See Div. 1, supra.

6. Finally, Sentinel and Sheriff Roundtree contend the trial court erred by granting permanent injunctive relief enjoining them from requiring probationers to submit to any condition of probation reserved in Article 2 to the DOC and from taking any action to supervise or enforce the conditions of any probated sentence after the expiration of its original term.  The decision whether to grant a request for injunctive relief rests in the sound discretion of the trial judge according to the circumstances of each case, and a reviewing court will not reverse the trial court's decision absent an error in the law contributing to that decision, a  manifest abuse of discretion, or a finding of no evidence on which to base the trial court's ruling.  See OCGA § 9-5-8; Chambers v. Peach County, 268 Ga. 672 (1) (492 SE2d 191) (1997).  But see OCGA § 9-5-2 ("Equity will take no part in the administration of the criminal law.  It will neither aid criminal courts in the exercise of their jurisdiction, nor will it restrain or obstruct them.").  As with the class certification issues, we do not in these appeals address the propriety of the trial court's grant of injunctive relief because the trial court's grant of such relief was based on its rulings regarding Sentinel's authority to toll

40

a probationer's sentence and impose conditions of probation under OCGA § 40-8-30.1, rulings which have been reversed or are otherwise affected by our decision today. Accordingly, those parts of the trial court's orders granting injunctive relief are reversed and the cases are remanded to the trial court for reconsideration of plaintiffs' requests for injunctive relief in light of this opinion. Again, we advise the trial court to carefully consider issues of justiciability in considering such requests. See Div. 1, supra.

Judgments in Case Nos. S14A1033, S14X1034, S14A1035, S14X1036, S14A1037, S14X1038, S14A1039, S14X1040, S14A1041, S14X1042 affirmed in part and reversed in part, and cases remanded with direction. All the Justices concur.

Judgments in Case Nos. S14A1251, S14X1252, S14A1253, S14A1254, S14X1255, S14A1256, S14A1257, S14X1258, S14A1259, S14A1260, S14X1261, S14A1262, S14A1263, S14X1264, S14A1265, S14A1266, S14X1267, S14A1268, S14A1269, S14X1270, S14A1271, S14X1272 affirmed in part and reversed in part, and cases remanded with direction. All the Justices concur.